19-463-cr
United States v. Vargas

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

---

August Term, 2019

Argued: March 13, 2020     Decided: June 9, 2020

Docket No. 19-463-cr

---

UNITED STATES OF AMERICA,

*Appellee,*

— v. —

MARILYN VARGAS,

*Defendant-Appellant.*

---

B e f o r e:

LYNCH and CHIN, *Circuit Judges,* and ENGELMAYER, *District Judge.*[*]

---

Marilyn Vargas appeals from her sentence imposed following her plea of guilty to the charge of conspiracy to distribute narcotics. She argues first, that the sentence was procedurally unreasonable because the district court erred in

---

[*] Judge Paul A. Engelmayer, of the United States District Court for the Southern District of New York, sitting by designation.

denying the government's motion for a one-level reduction in her offense level for timely accepting responsibility under U.S.S.G. § 3E1.1(b) and second, that the sentence imposed was substantively unreasonable. Because we agree that the district court committed a procedural error, we REMAND for vacatur of the judgment and resentencing, without reaching the substantive reasonableness of the sentence.

---

BRENDAN WHITE, White & White, New York, NY (Mitchell C. Elman, Law Offices of Mitchell C. Elman, P.C., Garden City, NY, *on the brief*), *for* Defendant-Appellant Marilyn Vargas.

ROBERT B. SOBELMAN, Assistant United States Attorney (Andrew Chan, Daniel B. Tehrani, Assistant United States Attorneys, *on the brief*), *for* Geoffrey S. Berman, United States Attorney for the Southern District of New York, New York, NY.

---

GERARD E. LYNCH, *Circuit Judge*:

Defendant-appellant Marilyn Vargas appeals from a judgment entered in the United States District Court for the Southern District of New York (Valerie E. Caproni, *J.*), following her plea of guilty to a charge of conspiracy to distribute narcotics, in violation of 21 U.S.C. § 846. The district court sentenced Vargas to 90 months' imprisonment. Vargas argues principally that the district court erred by denying the government's motion for a one-level reduction in her offense level

2

for timely accepting responsibility under U.S.S.G. § 3E1.1(b). Because we agree that the district court erred in this way, we REMAND the matter with instructions to the district court to vacate the judgment and resentence the defendant. We do not reach Vargas's additional argument that her sentence was substantively unreasonable.

## BACKGROUND

On November 30, 2017, Vargas was arrested for her role in a drug trafficking organization that transported cocaine into the United States. Prior to her arrest, Drug Enforcement Administration ("DEA") agents observed Vargas drive into the parking lot of a restaurant. Shortly thereafter, another vehicle pulled up next to Vargas's car; a co-conspirator got out of that vehicle and walked over to Vargas's. After speaking with Vargas for a few minutes, the co-conspirator placed a box in the trunk of her car. At that point, DEA agents approached and obtained Vargas's consent to search the trunk. Inside the box in the trunk, the agents found 20 brick-shaped packages containing a white powdery substance later determined to be cocaine.

On March 5, 2018, a grand jury indicted Vargas on a single count of conspiracy to distribute and possess with intent to distribute five kilograms or

3

more of cocaine, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A). On April 30, 2018, Vargas moved to suppress the evidence obtained from her car. On August 21 and 22, 2018, the district court held an evidentiary hearing on the motion, during which the court heard testimony from two DEA agents who surveilled and searched Vargas's car on the day of her arrest. At the conclusion of the hearing, the district court denied Vargas's motion and scheduled a trial to begin on September 26, 2018.

On September 5, 2018, Vargas pled guilty to the indictment pursuant to a plea agreement with the government (the "Plea Agreement"). In the Plea Agreement, the parties stipulated to the following calculation of the recommended sentencing range under the United States Sentencing Guidelines (the "Guidelines"): Under U.S.S.G. § 2D1.1(a)(5) and (c)(4), Vargas's base offense level was 32; a two-level reduction was warranted because she met the safety valve criteria set forth in § 5C1.2(a); and another three-level reduction was applied pursuant to § 3E1.1 because she (a) accepted responsibility and (b) did so in a timely manner, saving the government substantial resources in preparing for trial. The resulting total offense level of 27, combined with Vargas's criminal history category of I, yielded a guideline range of 70 to 87 months' imprisonment.

4

The Probation Office's guideline calculation in the Presentence Investigation Report mirrored that in the Plea Agreement. Nevertheless, the Probation Office recommended a below-guideline sentence of 60 months' imprisonment.

At sentencing, the district court's calculation differed in one important respect: the court concluded that Vargas was eligible only for a two-level, rather than a three-level, reduction in her offense level for acceptance of responsibility under § 3E1.1. The court denied the government's motion for the additional one-level reduction under § 3E1.1(b) because Vargas pled guilty only "after a lengthy suppression hearing had been held that required a substantial amount of work on the government's part," App'x 70, and, therefore, her plea did not allow the government to avoid the preparation required for trial. Based on a total offense level of 28, and a criminal history category of I, the district court determined that the Guidelines recommended a sentence of imprisonment for a term between 78 and 97 months. The district court proceeded to sentence Vargas to 90 months' imprisonment and three years of supervised release.

## DISCUSSION

We review a district court's sentencing decision for procedural and substantive reasonableness, using a "deferential abuse-of-discretion standard."

5

*See United States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) (internal citation omitted). "[A] sentence is procedurally unreasonable if a district court committed an error of law in the course of exercising discretion, [or] erred in determining the applicable Guideline range or availability of departure authority." *United States v. Johnson*, 567 F.3d 40, 51-52 (2d Cir. 2009) (internal quotation marks omitted) (emphasis omitted).

"The abuse-of-discretion standard incorporates *de novo* review of questions of law (including interpretations of the Guidelines) and clear-error review of questions of fact." *United States v. Legros*, 529 F.3d 470, 474 (2d Cir. 2008). "When a party properly objects to a sentencing error in the district court, we review for harmless error; issues not raised in the trial court because of oversight, including sentencing issues, are normally deemed forfeited on appeal unless they meet our standard for plain error." *United States v. Llanos*, 262 F. App'x 336, 336 (2d Cir. 2008).

Vargas contends first that the district court erred as a matter of law in denying the government's motion to accord her an additional one-level downward adjustment for timely acceptance of responsibility under U.S.S.G. § 3E1.1(b), and second, that her 90-month sentence was substantively

unreasonable. Because we agree with her first argument, we do not reach her second.

Vargas raises two distinct challenges to the district court's refusal to award the additional third "point" for acceptance of responsibility based on a resource-saving timely guilty plea. First, she contends that, once the district court has granted a two-level reduction under § 3E1.1(a), and the government has moved for the additional one-level reduction under § 3E1.1(b), the court has no power to deny the motion; it is *required* to reduce the defendant's offense level by one. Second, Vargas contends that, assuming that the district court had the power to deny the motion, it nevertheless erred in denying the motion in this case. We reject Vargas's first contention, but agree with her second.

## I.     A District Court Has the Power to Deny a Government Motion Under § 3E1.1(b).

Section 3E1.1 of the Guidelines provides, in two subsections, for reduction of a defendant's offense level by up to three levels for acceptance of responsibility. U.S.S.G. § 3E1.1. Subsection (a) provides that "[i]f the defendant clearly demonstrates acceptance of responsibility for his offense," the court shall "decrease the offense level by 2 levels." *Id.* § 3E1.1(a). Subsection (b), which is at

issue here, provides for a further one-level decrease if (1) the defendant qualifies for a reduction under subsection (a); (2) the defendant's offense level prior to the application of subsection (a) is level 16 or higher; and (3) "upon motion of the government stating that the defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently[.]" *Id.* § 3E1.1(b).

Vargas at times appears to argue that the district court has no *discretion* to deny a government motion. That is indeed how some courts have characterized the issue. *See, e.g., United States v. Mount*, 675 F.3d 1052, 1055 (7th Cir. 2012) ("The question is whether, in cases where [the first two criteria under § 3E1.1(b) are met and the government has moved the court to award the third point reduction], the additional one-level downward adjustment remains discretionary with the court, or if—strictly as a matter of properly computing the advisory guideline range—it is mandatory."). We respectfully believe that this formulation misconceives the issue. There is no question that where all three conditions in subsection (b) are satisfied, the application of the additional one-level decrease is mandatory, not

8

discretionary. *See United States v. Rood*, 281 F.3d 353, 357 (2d Cir. 2002) ("[G]ranting the additional one-level decrease in Section 3E1.1(b) is not discretionary where defendant satisfies the guideline's criteria."). That conclusion is consistent with the sentencing court's usual role in calculating the guideline sentencing range. The Sentencing Commission (and, in a few instances, Congress itself) defines the conditions under which offense levels are calculated and criminal history scores computed, and the court determines whether the conditions for applying a particular guideline are met in the case at hand.

Properly understood, however, the issue presented by Vargas's argument is the correct interpretation of "the guideline's criteria" for the award of the additional one-level adjustment it creates — specifically, whether the third condition under subsection (b) is satisfied simply by the government's *filing* of the motion, such that the district court is bound by the government's representation that the guilty plea has permitted the government to avoid preparing for trial and to allocate its resources efficiently, or the court is required to make its own factual determination about whether resources have in fact been saved by the plea. Under neither interpretation is the award of the third point *discretionary* in the sense that the court may use its own judgment in deciding

9

whether, taking the totality of the relevant circumstances into account, the adjustment is appropriate. But if the guideline requires the court to find that the government's representations are accurate, the court retains the ultimate authority to determine whether that is so. If that is the proper reading of the guideline, the court retains the *authority*, in at least some circumstances, to deny the government's motion.

The distinction is nicely illustrated by the facts of our summary decision in *United States v. Reyes*, 718 F. App'x 56 (2d Cir. 2018). There, the district court gave the defendant the basic two-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a), but it declined to award the third point, despite the government's motion, on the ground that the defendant had perjured himself during the proceedings, and therefore did not deserve the additional reduction. We held that the district court "commit[ted] a legal error in concluding it had discretion to deny a one-level reduction under § 3E1.1(b)," based on its determination that the defendant had perjured himself. *Id.* at 62. The district court in *Reyes* believed that the award of the third point was a discretionary matter, to be granted or withheld based on the court's assessment of the totality of the circumstances. But the court there did not purport to assess the facts of the

10

case to determine whether the defendant had indeed entered a "timely" plea, thus "permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently." U.S.S.G. § 3E1.1(b). Rather than finding that the criteria laid out in the relevant guideline had not been met, the district court exercised purported discretion to grant or deny the adjustment for reasons of its own.

The issue here is different. Here, the district court ruled that the criteria set forth in the guideline had not been met, because the plea was not sufficiently timely to result in the benefits to the government and the court referenced in the guideline's text. Vargas maintains that this was error, because the guideline requires only that the government *say* that the plea resulted in such benefits, and that the district court may not evaluate the accuracy of that representation. The government, in contrast, although adhering to its view that its assertion was correct, defends the court's ultimate authority to decide the factual question. It is common ground between the parties that the government's motion is a necessary precondition for the award of the third point; the guideline clearly requires a government motion, and the court does not have power to award the third point without a government request, simply because *the court* believes that the plea

came early enough to save resources. The dispute is about whether the government's motion is not merely *necessary*, but also *sufficient*, to require the additional downward adjustment.

We look first to the text of § 3E1.1(b) to govern our resolution of that dispute. As we will see, the text is unclear on the matter. To understand why the text is unclear, it will be useful to begin by explaining how the confusing text of the governing guideline came to take its present form.

## A. The History of § 3E1.1

Prior to 1992, the Guidelines provided only a two-level reduction for acceptance of responsibility, using language substantially similar to that which now appears in § 3E1.1(a). *See* U.S.S.G. § 3E1.1 (1991). As has been clear from the beginning, the focus on "acceptance of responsibility" was designed with two purposes in mind. On the one hand, the reduction in the guideline sentencing range was intended in part as an incentive to defendants to demonstrate an acceptance of responsibility by pleading guilty, and thus to preserve the plea bargaining system in which defendants forgo their right to a time-consuming trial in return for a measure of leniency. On the other, the original guideline did not absolutely tie the reduction to the entry of a guilty plea. As the Sentencing

Commission explained: "The adjustment for acceptance of responsibility does not automatically follow from entry of a guilty plea. Conversely, the adjustment may also be applied in some cases where the defendant does not plead guilty." Supplementary Report on the Initial Sentencing Guidelines and Policy Statements 50 n.83 (1987). Thus, while entry of a guilty plea was a significant factor in determining whether a defendant had accepted responsibility, and would normally result in the reduction, other factors (such as obstruction of justice or the commission of additional crimes after the plea of guilty) could result in the denial of credit to a defendant who pled guilty and (rarely) the award of credit to one who did not. *See* U.S.S.G. § 3E1.1 cmt. n.3 (1991) ("Entry of a plea of guilty prior to the commencement of trial combined with truthful admission of involvement in the offense and related conduct will constitute significant evidence of acceptance of responsibility for the purposes of this section. However, this evidence may be outweighed by conduct of the defendant that is inconsistent with such acceptance of responsibility."); *see also United States v. Woods*, 927 F.2d 735, 735-36 (2d Cir. 1991) (affirming denial of offense level reduction for acceptance of responsibility despite guilty plea because defendant repeatedly tested positive for drug use during pre-sentence period, failed to

13

report to the probation office weekly, and committed an additional crime while on bail).

In 1992, however, the Sentencing Commission added subsection (b), to provide for an additional one-level reduction in cases in which the otherwise applicable offense level exceeded a set threshold, where the defendant — though not qualifying for a departure for providing "substantial assistance in the investigation or prosecution of another," U.S.S.G. § 5K1.1 — made a stronger showing of contrition, and provided greater benefit to the government, than was demonstrated simply by pleading guilty. One apparent purpose of the new rule was to provide an incentive to defendants to offer to plead guilty at an early enough stage of the process to save the government the expense and burden not only of a *trial*, but also of the intensive *preparation* required for a scheduled trial, and to permit the court to efficiently reallocate the time that had been set aside for the trial. Thus, the additional reduction was made available:

> [i]f the defendant qualifies for a decrease under subsection (a), the offense level determined prior to the operation of subsection (a) is level 16 or greater, and the defendant has assisted authorities in the investigation or prosecution of his own misconduct by taking one or more of the following steps: (1) timely providing complete information to the government concerning his own involvement in the offense; or (2) timely notifying

> authorities of his intention to enter a plea of guilty,
> thereby permitting the government to avoid preparing
> for trial and permitting the court to allocate its resources
> efficiently.

U.S.S.G. § 3E1.1(b) (1992). Under that version of the guideline, we held, "[t]he power to lower a defendant's offense level [under § 3E1.1(b)] was vested solely in the judiciary" because "subsection (b) did not require a government motion for the additional reduction to apply." *United States v. Sloley*, 464 F.3d 355, 359-60 (2d Cir. 2006).

The situation changed in 2003, when Congress directly amended § 3E1.1(b) in the Prosecutorial Remedies and Tools Against the Exploitation of Children Today Act of 2003 (the "PROTECT Act"), and made the application of the one-level reduction contingent on a motion by the government. *See* Pub L. No. 108-21, § 401(g), 117 Stat. 650, 671-72 (2003). In particular, Congress amended § 3E1.1(b) to read as it did at the time of Vargas's sentencing:

> (b) If the defendant qualifies for a decrease under
> subsection (a), the offense level determined prior to the
> operation of subsection (a) is level 16 or greater, and
> upon motion of the government stating that the
> defendant has assisted authorities in the investigation or
> prosecution of his own misconduct by timely notifying
> authorities of his intention to enter a plea of guilty,
> thereby permitting the government to avoid preparing
> for trial and permitting the government and the court to

> allocate their resources efficiently, decrease the offense
> level by 1 additional level.

U.S.S.G. § 3E1.1(b), *as amended by* § 401(g)(1), 117 Stat. at 671. The PROTECT Act

also amended the commentary to § 3E1.1, to emphasize that an "an adjustment

under subsection (b) may only be granted upon a formal motion by the

Government at the time of sentencing . . . [b]ecause the Government is in the best

position to determine whether the defendant has assisted authorities in a manner

that avoids preparing for trial[.]" U.S.S.G. § 3E1.1 cmt. n.6, *as amended by*

§ 401(g)(2)(B), 117 Stat. at 672.

It is undisputed that, under the present version of the guideline, "a

government motion is a necessary prerequisite to the additional one-level

decrease under Guidelines § 3E1.1(b)." *Sloley*, 464 F.3d at 359. The question before

the Court is whether the government's motion is in itself a *sufficient* condition to

satisfy the third prong of § 3E1.1(b).

**B.    Textual Analysis**

Any effort to answer that question by reference to the "plain meaning" of

the text of the amended guideline is confounded by the fact that the controlling

language is syntactically incoherent, and does not adopt any of the readily

16

available alternatives that would have provided a clear answer, one way or the other, to the question. As a result, a close reading of the text, rather than providing a clear answer, confirms its ambiguity.

To begin, the words of the amendment do not "scan" grammatically. Both parties, and all courts that have addressed the provision, construe the present guideline, like its predecessor, as containing three criteria, listed sequentially within a conditional clause introduced by the word "if," and ultimately joined by the conjunction "and." As a coordinating conjunction, "and" links two or more identical parts of speech (for example, two nouns, as in "Mary and John went to the beach") or two or more grammatically equivalent structures (for example, two phrases or clauses, as in "She remains in our hearts and in our minds"). *See, e.g.*, THE CHICAGO MANUAL OF STYLE, § 5.198 (17th ed. 2017). The 1992 version of § 3E1.1(b) conformed to this basic grammatical rule, listing three conditions for the adjustment, contained in parallel clauses: The additional reduction is to be awarded if "[i] the defendant qualifies . . . under subsection (a), [ii] the offense level . . . is 16 or greater, and [iii] the defendant has assisted authorities [by entering a timely plea]." U.S.S.G. § 3E1.1(b) (1992). The conjunction "and" linked three grammatically equivalent clauses; it was thus apparent that all three were

to be treated identically, as conditions whose presence the court was required to determine.

The amended text does not conform to the grammatical rule. In the amended guideline, the third item in the series is not a coordinate clause, but a mere prepositional phrase, "upon motion of the government stating that the defendant has assisted authorities [by entering a timely plea]." U.S.S.G. § 3E1.1(b). This is not merely a pedantic criticism of an inelegant construction; the drafting error is the root of the ambiguity in the text. The third condition contains two pieces: the motion of the government and the result of the defendant's actions. Had the drafter of the language focused on the question at issue in this case, a correct grammatical construction would naturally have followed one of two paths. If the drafter intended the result advocated by Vargas, in which the government's motion was dispositive, the third condition would naturally have stated "[iii] and the government certifies that the defendant has assisted authorities [by entering a timely plea and thus saving resources]." It would then be clear that the fact to be determined by the court (equivalent to the other facts to be determined under the first two conditions) is simply whether the government had filed the appropriate certification. If the drafter intended the

18

result advocated by the government, in which the court is required to determine the accuracy of the government's representation, the natural way to express the result would be to say something like "and [iii] the defendant has assisted the authorities [by entering a timely plea and thus saving resources], provided that the government moves for a reduction." It would then be clear both that the government's motion was required, and that the court must still find that the defendant had provided the required assistance in saving government and court resources. In either case, the principal verb in the coordinate clause would tell us what the court needed to determine.

But the drafters made neither choice, presumably because their principal concern was not with the issue we now face. It is clear that Congress wanted (procedurally) to require a motion by the government for the additional reduction to be granted, and (substantively) for the reduction to turn on whether the defendant had entered a timely plea, thus allowing the government and the court to allocate resources more efficiently. But the relation between those two goals is not directly answered by the words chosen.

That does not mean that we are without textual clues as to what mattered to Congress. On the one hand, it is clear that the requirement of a government

19

motion was primary. The motion is, syntactically, the linchpin of the third

condition: The remaining factors are detailed in the form of a participial clause

telling us what the motion must "stat[e]" — that the defendant has assisted the

authorities — from which emerge the qualifications about the nature of the

assistance required (a timely offer of a guilty plea), and the results of that offer

(saved work and more efficient allocation of resources). *Id*. That the motion was

the main point of the amendment might suggest that the drafter wanted the

motion to be controlling.

But that the motion is important (and indeed necessary) to the award of the

reduction does not mean that its presence *requires* the grant of a further

sentencing benefit to the defendant. As noted, if that was the intention, it would

have been very easy to say exactly that, and the amendment does not say it.

Moreover, the requirement of the motion was plainly inserted to *limit* or *condition*

the availability of the reduction. The court is not to grant the reduction if the

*defendant* asks for it and the court thinks that the defendant has fulfilled his

triggering obligation to offer a timely plea; rather, the *government* must seek the

reduction or it is simply unavailable. Congress made that intention crystal clear,

explicitly stating it not merely in legislative history, but in the text of the

amending legislation itself. The PROTECT Act changed both the text of the guideline, and the guideline commentary, the latter emphasizing that the reduction "may only be granted upon a formal motion by the Government." U.S.S.G. § 3E1.1 cmt. n.6, *as amended by* § 401(g)(2)(B), 117 Stat. at 672. The emphasis is on limiting when the reduction may be *granted*; nothing is said as to when it may be *denied* by the court.

The importance of the required motion, then, does not in itself signify that Congress intended to make the motion a sufficient as well as a necessary condition. Similar provisions in the Guidelines and in statutes require a motion by the government as a prerequisite to sentencing leniency, opening the door to a reduction but leaving substantial authority to the sentencing court. For example, the other principal statutory authorization for lower sentences based on assistance to the authorities, the provision permitting a sentence below otherwise-applicable mandatory minimum sentences for defendants who provide substantial assistance in the prosecution of others, gives "the court . . . the authority" to impose a sentence below the minimum, "[u]pon motion of the Government." 18 U.S.C. § 3553(e). It is well established that the government's motion is a necessary prerequisite to a below-minimum sentence, but that the

government's motion does not oblige the court to impose a reduced sentence. *See Melendez v. United States*, 518 U.S. 120, 125-26 (1996) ("We believe that § 3553(e) requires a Government motion requesting or authorizing the district court to 'impose a sentence below a level established by statute as minimum sentence' before the court may impose such a sentence."); *United States v. Huerta*, 878 F.2d 89, 94 n.2 (2d Cir. 1989) ("[A] court is free to grant or deny a Section 3553(e) motion by the government."). The parallel guideline provision permitting guideline departures for such cooperation similarly requires a government motion, providing that "[u]pon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court may depart from the guidelines." U.S.S.G. § 5K1.1. Once again, the motion is a prerequisite to the authorized departure, but the court is *permitted*, not required, to grant a reduced sentence.

These provisions illustrate that the requirement of a government motion as a precondition to sentencing relief does not necessarily suggest that Congress made such a motion self-executing. Indeed, the very concept of a "motion" implies the contrary. While the term "motion" is not defined in the PROTECT

22

Act, the Guidelines, or the Federal Rules of Criminal Procedure, its meaning is well understood by all lawyers. The Federal Rules of Civil Procedure provide for motions to be filed when a party wants to make "[a] request for a court order." Fed. R. Civ. P. 7(b)(1). Black's Law Dictionary (11th ed. 2019) defines a "motion" as "[a] written or oral application requesting a court to make a specified ruling or order," and another standard reference similarly states that "[a] motion is simply a formal request directed to a court," BRYAN A. GARNER, THE REDBOOK: A MANUAL ON LEGAL STYLE § 24.1(a), at 489 (4th ed. 2018). A motion, then, generally speaking, is a *request* made by a party for a court to take some action that the party desires the court to take; it is not usual that the mere filing of a "motion" *compels* such action.

But while these considerations make clear that the requirement of a government motion does not in itself compel the conclusion that the court is obligated to *grant* the motion once made, they do not in themselves provide an answer to our question. Notably, both 18 U.S.C. § 3553(e) and U.S.S.G. § 5K1.1 use language different from that in § 3E1.1(b); the former says that on motion by the government the court "shall have the authority" to impose a sentence below the statutory minimum, and the latter says that on such a motion the court "may"

depart from the guideline recommendation. These formulations grant district courts considerable discretion, and do so explicitly. And the fact that a motion "requests" action by the court does not in itself establish that the court is required either to exercise discretion or to assure itself that a particular legal standard has been met. Courts are sometimes *required* to take action upon a party's request. For example, the Classified Information Procedures Act ("CIPA") provides that "[u]pon motion of the United States, the court *shall* issue an order to protect against the disclosure of any classified information disclosed by the United States to any defendant in any criminal case in a district court of the United States." 18 U.S.C. app. 3 § 3 (emphasis added). But in such (relatively unusual) cases, the language of the provision also differs from that of the guideline in question here. Unlike § 3E1.1(b), CIPA § 3 uses explicitly mandatory language.

The text of § 3E1.1(b) offers one final clue to its intended meaning. The government motion required by the guideline must state that the defendant's offer to plead guilty was sufficiently "timely" to "permit[] the government to avoid preparing for trial and permit[] the government *and the court* to allocate their resources efficiently[.]" U.S.S.G. § 3E1.1(b) (emphasis added). In the PROTECT Act, Congress added language to the § 3E1.1 commentary explaining

24

the requirement of a government motion, noting that "the Government is in the best position to determine whether the defendant has assisted authorities in a manner that avoids preparing for trial." *Id.* § 3E1.1 cmt. n.6, *as amended by* § 401(g)(2)(B), 117 Stat. at 672. Thus, if the guideline language referenced only the resource allocation benefit to the government, the text would support an argument that only the government's views on the subject matter. But it does not. Rather, Congress turned the rule on the benefits of an early plea in permitting efficient allocation of resources both by "the government *and the court*." *Id.* § 3E1.1(b) (emphasis added). While the government is in the best position to assess whether the plea came sufficiently early to allow it to reallocate its resources, the court, and not the government, is in the best position to determine how the plea affected the court's ability to make efficient use of its physical and human resources. It would be strange to make the government's views on that subject conclusive on the court.

As discussed above, a plain reading of the PROTECT Act's amendments to § 3E1.1(b) and its associated commentary does not cleanly answer the question posed by this case. But we must nevertheless answer the question; a court cannot simply throw up its hands and declare a provision ambiguous. We believe that

25

the better reading of the guideline in light of the language and history of the

provision is that the district court is authorized to deny the government's motion

if it determines that the conditions set forth in § 3E1.1(b) are not met.

First, although the matter is anything but free from doubt, the language

does offer clues pointing to that conclusion. As we have noted, the requirement

of a "motion" does not conclusively determine that the motion may be denied.

But most commonly, as discussed above, a motion is an "application *requesting* a

court to make a specified ruling or order." *Motion*, BLACK'S LAW DICTIONARY

(11th ed. 2019) (emphasis added). In the vast majority of situations, the party

making the motion must show either that a particular legal standard for the

granting of the request is met on the facts of the case, such that the court must

grant the motion as a matter of law, or that the court has discretion to grant the

request, and there are persuasive reasons for the court to do so. In either event,

the court determines whether the facts of the case warrant the relief requested.

There is an obvious alternative word that would have made it clear that the

government's assertion was binding on the court: Congress could simply have

provided that the reduction was available "upon *certification* by the government"

that a timely plea had permitted resource savings. *See id.* at *Certification* (defining

26

a certification as "the process of giving someone or something an official document stating that a specified standard has been satisfied"). But it did not.

Moreover, the text specifies the reasons why the timely guilty plea warrants an additional sentencing concession to the defendant, and those reasons sound in the benefits such a plea provides to the government *and the court*. It would make no sense to exclude the court entirely from the determination of whether those benefits have been achieved, by making the *government's* assessment that the court has benefitted from the plea conclusive. Congress could have made time and resource savings for the government alone relevant to the award of the adjustment, but again, it did not do so.

Second, the history of the provision, coupled with what the amended text does *not* say, further counsels against Vargas's interpretation of the guideline. Before the amendment, the assessment of whether the third point should be awarded was entirely in the hands of the court, which was exclusively empowered to decide whether the timing of the plea, or other assistance to the authorities offered by the defendant, warranted a one-level downward adjustment of the offense level. Although the PROTECT Act added a "motion of the government" to the list of conditions required to satisfy § 3E1.1(b), the Act's

corresponding addition to the commentary speaks only to Congress's intention to restrict the court's authority to *grant* the adjustment, providing that "an adjustment under subsection (b) *may only be granted* upon a formal motion by the Government at the time of sentencing." U.S.S.G. § 3E1.1 cmt. n.6, *as amended by* § 401(g)(2)(B), 117 Stat. at 671-72 (emphasis added). The statutory comment does not say that the adjustment *must* be granted when the government makes such a motion, and it does not suggest that Congress intended to strip the district court of its long-standing authority to refuse to award the reduction when the conditions in § 3E1.1(b) are not met. If Congress intended the government's motion to preclude the district court from determining whether the conditions in § 3E1.1(b) are met, we "would expect to see . . . a mandatory command" in the commentary. *United States v. Williamson*, 598 F.3d 227, 229 (5th Cir. 2010). But again, Congress did not insert such a command.

We are fortified in our interpretation by the views of the Sentencing Commission. Two of our sister circuits, confronted in the aftermath of the PROTECT Act with arguments similar to those made by Vargas here, reached

28

conflicting results.[1] In 2013, in an effort to resolve the split, the Sentencing

Commission undertook to address the question of the courts' authority to deny a

---

[1] The Seventh Circuit held that "the additional one-level reduction is mandatory once the government determines that the criteria spelled out in § 3E1.1(b) are satisfied and it makes the necessary motion." *Mount*, 675 F.3d at 1053. The Fifth Circuit reached the opposite conclusion, holding "that the district court retains the ability to decide whether the § 3E1.1(b) criteria have been met" and to deny the government's motion if it determines that those criteria are not met. *Williamson*, 598 F.3d at 230.

Our Court has never previously addressed this issue. Contrary to Vargas's assertion, our decision in *Reyes*, 718 F. App'x 56, does not support her position. As discussed above, we held in *Reyes* that the district court "commit[ted] a legal error in concluding it had discretion to deny a one-level reduction under § 3E1.1(b)," based on its determination that the defendant had perjured himself. *Id.* at 62. Even if we were bound by summary orders, *but see Jackler v. Byrne*, 658 F.3d 225, 244 (2d Cir. 2011) (noting that summary orders expressly declare that they do not create binding precedents), any language in *Reyes* that could be read to suggest that the government's motion by itself satisfies the third condition of § 3E1.1(b) was dictum. Whether the district court is empowered to assess the accuracy of the assertions in the government's motion was not at issue in *Reyes*. *See Cent. Va. Cmty. Coll. v. Katz*, 546 U.S. 356, 363 (2006) ("[W]e are not bound to follow our dicta in a prior case in which the point now at issue was not fully debated."). The issue in *Reyes* was whether the district court has discretion to deny the one-level reduction for acceptance of responsibility for reasons *unrelated* to the criteria specified in § 3E1.1(b). Our decision today is entirely consistent with the holding of *Reyes* that it does not. The district court can deny the one-level reduction only if it determines the conditions in § 3E1.1(b) are not met. *See also Rood*, 281 F.3d at 357 (concluding that district court erred by declining to grant the defendant the one-level decrease on the ground that he violated the conditions of his pretrial release). The Sentencing Commission agrees, noting that "the Commission in its study of the PROTECT Act could discern no congressional intent to allow decisions under § 3E1.1 to be based on interests not identified in § 3E1.1." U.S.S.G. App. C., Amend. 775 (Nov. 1, 2013).

government motion under § 3E1.1(b). After studying the PROTECT Act, the Sentencing Commission discerned "no congressional intent to take away from the court its responsibility under § 3E1.1 to make its own determination of whether the conditions were met," and "observe[d] that one of the considerations in § 3E1.1(b) is whether the defendant's actions permitted the court to allocate its resources efficiently, and the court is in the best position to make that determination." U.S.S.G. App. C., Amend. 775 (Nov. 1, 2013). Accordingly, the Sentencing Commission amended the commentary to clarify that the district court has the authority to "decline to apply the third level of reduction when the government has moved for it." *Id*. The commentary to § 3E1.1 now advises that the district court has the authority to rule on the government's motion, and in doing so, must independently determine whether the conditions of § 3E1.1(b) are met:

> If the government files such a motion, and the court *in deciding whether to grant the motion also determines* that the defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently, the court should grant the motion.

U.S.S.G. § 3E1.1 cmt. n.6 (emphasis added).

Ordinarily, commentary "that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline." *Stinson v. United States*, 508 U.S. 36, 38 (1993). We need not decide whether that degree of deference is owed to the Sentencing Commission when its commentary interprets text that was added to the Guidelines not by the Sentencing Commission itself but by Congress. Far from being "a plainly erroneous reading" of § 3E1.1(b), *id.*, however, the Sentencing Commission's interpretation is consistent with our own analysis, detailed above, of the text of § 3E1.1. We thus take the Sentencing Commission's considered view into account only for the persuasive force of its expertise in sentencing matters.[2]

---

[2] While we owe, and give, no deference to the government's interpretation of criminal statutes, *see Abramski v. United States*, 573 U.S. 169, 191 (2014) ("[C]riminal laws are for courts, not for the Government, to construe."), we also note that the government itself has not argued, either in the district court or here, that the district court was compelled to accept its representation that the conditions set by § 3E1.1(b) were met, instead arguing on appeal that its assessment is *not* binding on the court.

Accordingly, we hold that although the government's motion is a necessary prerequisite for the application of the one-level reduction under § 3E1.1(b), such a motion is not sufficient to require the court to grant that reduction. Instead, it triggers the district court's responsibility to assess whether the defendant's notification that she intended to plead guilty was sufficiently timely to allow the government and the district court to efficiently allocate their resources. The district court is authorized to deny the government's motion if it determines that those conditions are not satisfied.

## II.     The District Court's Denial of the Government's Motion Was Error.

Alternatively, Vargas contends that, even if the district court does have the authority to deny the government's motion, it erred by doing so here. We agree. The district court failed to adequately explain its conclusion that the conditions set by § 3E1.1(b) were not met.

When determining whether Vargas was entitled to the additional one-level reduction in her offense level under § 3E1.1(b), the district court engaged in the following dialogue with the government:

> [Court]: Why is she entitled to the third point when we went through a suppression hearing in this case? . . .

[Government]: Your Honor, the government's view was that we had not been preparing for trial; we were preparing for the suppression hearing. Obviously, trial was not far off.

[Court]: And it would be the same witnesses.

[Government]: It would be some of the same witnesses. There would be additional witnesses for trial.

[Court]: True, but are you saying you did not have to do substantial trial preparation work to prepare for the suppression hearing?

[Government]: I suppose it depends on how you look at it. We were preparing for the suppression hearing. Much of that preparation would have been carried over and not duplicated for the trial, but there would have been some additional preparation that would've been needed for trial. It would have been – there was substantial overlap, as your Honor is flagging.

[Court]: OK. Is the government moving for the third point?

[Government]: Yes, your Honor. . . .

[Court]: All right. Well I do not find it. . . . [T]he third point is for someone who accepts responsibility early in the process, to save the government from the work involved in preparing for trial. In this case, the suppression hearing was probably two-thirds of the trial. The informant would have had to testify, maybe. They might . . . have structured a trial without having had the informant testify. [Vargas] was caught with 20

kilograms of cocaine in the trunk of her car, so it's not
clear to me that this was early enough in the process
that that third point is available. . . . I respectfully
disagree with probation. This plea was entered if not
quite on the eve of trial, close, and certainly after a
lengthy suppression hearing had been held that
required a substantial amount of work on the
government's part, so she gets a minus two for that.

App'x 67-70. Based on this record, we conclude that the district court lacked a
sufficient factual basis to justify its decision to deny the government's motion.

First, the district court made *no* factual findings about whether the plea
was sufficiently timely to allow it to allocate its resources efficiently. Indeed, the
court made no reference whatsoever to the plea's effect, or lack of it, on the
court's ability to make efficient use of its time. As noted above, a principal reason
why both we and the Sentencing Commission concluded that the district court
has the power to deny a government motion is that the sentence adjustment is
intended in part to reward a defendant for deciding to plead guilty early enough
to permit the court, as well as the government, to reallocate its resources, and the
district court is best positioned to evaluate how the plea affected it. Here,
however, the court did not rest its decision on a finding that the plea came too
late for the court to pivot to a more efficient use of the time previously budgeted

for trial, and did not identify any inconvenience or inefficiency inflicted on the court itself.

Moreover, we see nothing in the record, or in our common experience as judges, that would support any such finding. The parties notified the court of Vargas's intention to plead guilty approximately one month before the scheduled trial date, and the plea was entered and accepted three weeks before that date. The court did not suggest, nor is it apparent from the record, that the court could no longer "schedule its calendar efficiently," U.S.S.G. § 3E1.1 cmt. n.6, because the "plea was entered if not quite on the eve of trial, close," App'x 70. This is not a case in which the defendant pled on the morning of trial. While we do not suggest that there is a specific temporal limit beyond which a guilty plea must automatically be considered timely, our case law provides no support for a presumption that a plea announced four weeks in advance of trial comes too late to permit a court to find other things to do with time previously reserved for a short, and not particularly complicated, trial. *Compare United States v. Kumar*, 617 F.3d 612, 636-37 (2d Cir. 2010) (concluding that lateness of a plea was not in itself a sufficient foundation for denying a reduction for acceptance of responsibility when the defendant pled two weeks before trial), *with United States v. Patasnik*, 89

35

F.3d 63, 73 (2d Cir. 1996) (concluding that notification of intent to plead guilty on the morning of jury selection was not sufficiently timely to warrant additional one-level reduction under § 3E1.1(b)). If the court had other cases awaiting trial that could have been tried in the allocated time, four weeks should have been sufficient notice to allow the parties to one of those cases to be ready for trial. Even if no other case could be slotted into the few days previously reserved for the Vargas trial, busy district judges have plenty of other work that can be done in chambers, and other courtroom proceedings that can be conducted, during the time that had been allocated to an aborted trial.

Second, the district court's conclusion that the government, contrary to its own announced assessment, had not saved resources because of the plea rests on flimsy foundations. Although the district court is not bound by the government's motion, it must grant substantial deference to the government's claim that the timing of the plea allowed it to avoid trial preparation because, as Congress recognized, the government "is in the best position" to make that determination. *See* U.S.S.G. § 3E1.1 cmt. n.6. The district court here failed to do so.

At the outset, we note that the guideline focuses on whether the plea came in sufficient time to permit the government "to avoid preparing for trial" and "to

36

allocate [its] resources efficiently." *Id.* § 3E1.1(b). The focus is on the work that the

government is *spared* by the guilty plea, and the more efficient use of law

enforcement resources that is enabled when the government does not have to

devote time to trial preparation – not on the resources that had already been

devoted to litigating the case. Here, the district court seemed to focus not on the

standard set by the Guidelines, but on the amount of work the government had

to do as a result of the filing of a suppression motion. *See* App'x 67, 70 ("Why is

she entitled to the third point when we went through a suppression hearing in

this case? . . . This plea was entered . . . after a lengthy suppression hearing had

been held that required a substantial amount of work on the government's

part[.]").

The text of § 3E1.1(b) does not require a defendant to plead without

engaging in pretrial motion practice; it requires that the plea be sufficiently in

advance of trial to avoid extensive trial preparation. *See United States v. Lee*, 653

F.3d 170, 173-74 (2d Cir. 2011) (noting that "the plain language of § 3E1.1(b) refers

only to prosecution resources saved when the defendant's timely guilty plea

'permit[s] the government to avoid preparing *for trial*,'" and holding that the

government cannot refuse to move for the one-level reduction on the ground that

37

it had been required to prepare for a *Fatico* hearing) (quoting U.S.S.G. § 3E1.1(b)).

Similarly, the commentary refers "only to the government's ability 'to determine

whether the defendant has assisted authorities in a manner that avoids preparing

*for trial.*'" *See id*. at 174 (quoting U.S.S.G. § 3E1.1 cmt. n.6).[3]

More appropriately, the district court attempted to relate the time invested

in the suppression hearing to the amount of trial preparation that the government

avoided, noting that due to overlap in the evidence relevant to the hearing and

the trial, the government had in effect already done a great deal of the work that

would have to be done to prepare for trial. The government, however,

maintained that even though Vargas pled guilty after the suppression hearing,

the timing of her plea still spared the government the "additional preparation

that would've been needed for trial." App'x 68. As Congress made clear, the

government is in the best position to assess this question; its assessment is

---

[3] Nor did Vargas delay filing her suppression motion until shortly before trial. To the contrary, the motion was filed on April 30, 2018, and was fully briefed by June 8. On June 11, the district court scheduled the hearing for August 21, and resolved the motion, and scheduled trial for September 26, at the conclusion of the hearing on August 22. Vargas notified the government of her intent to plead guilty, and the government in turn advised the court of the parties' agreement, less than a week after the resolution of the motion, a full four weeks before the trial date that had been set just a week earlier.

entitled to considerable deference. We do not suggest that the district court must rubber-stamp implausible representations by prosecutors. If the government were to claim that a defendant who pled guilty on the morning a scheduled three-day trial was to begin had nevertheless helped the government "avoid preparing for trial," skeptical inquiry would surely be appropriate.

But this is not such a case. Any experienced criminal lawyer knows that preparing for a jury trial involves more work than preparing for a suppression hearing, and few federal prosecutors would fail to spend most of the last couple of weeks preceding a short trial honing their presentation. Even when "there is substantial overlap between the issues that [were] raised at the suppression hearing and those that will be raised at trial, preparation for a [suppression hearing] would not require the preparation of voir dire questions, opening statements, closing arguments, and proposed jury instructions, to name just a few examples." *United States v. Marquez*, 337 F.3d 1203, 1212 (10th Cir. 2003).

To the extent that the district court had concerns about the accuracy of the prosecutor's representations, including that a trial of Vargas would entail "additional witnesses," App'x 68, the proper course was to inquire into such matters. But, rather than making targeted inquiries into or factual findings about

the concrete work that trial preparation and trial would entail and the potential time and cost savings (or lack thereof) brought about by Vargas's plea, the court summarily rejected his position based on conjecture about how the government would try its case.

For example, the district court hypothesized that "the suppression hearing was probably two-thirds of the trial," based on the court's theory that, in addition to the witnesses who testified at the suppression hearing, the government might have had to call only one additional witness, an informant, to testify at trial, and speculated that the government might even have been able to prove its case without the informant's testimony because Vargas had been "caught with 20 kilograms of cocaine in the trunk of her car." App'x 69. Trial judges have certainly been known to think that a prosecutor has overtried a case, and did not really need all the evidence that was offered. But a district court is poorly situated to make such predictions in advance of trial, and the court's attempt to do so here only underscores that the government is better positioned to make this assessment. Even if, in the end, the government decided that a pared-down presentation was sufficient, or that the informant did not make a sufficiently compelling witness to add much persuasive force, a diligent prosecutor would

have been well advised to make that decision only after carefully preparing the informant to testify, and perhaps only after seeing how the case seemed to be going after the law enforcement officers' testimony. We see no reliable way of dismissing, on this record, the prosecutor's assertion that additional trial preparation work was in store for the government at the point that Vargas offered to plead guilty.

We thus agree with the Tenth Circuit that "where a defendant has filed a non-frivolous motion to suppress, and there is no evidence that the government engaged in preparation beyond that which was required for the motion, a district court may not rely on the fact that the defendant filed a motion to suppress requiring a 'lengthy suppression hearing' to justify a denial of the third level reduction under § 3E1.1(b)(2)." *Marquez*, 337 F.3d at 1212.

Accordingly, we hold that the district court erred by denying the government's motion without making the factual findings necessary to justify its decision to do so. Moreover, we cannot conclude that the error was harmless because the record does not clearly indicate that the district court would have imposed the same sentence absent this procedural error. *Cf. United States v. Jass*, 569 F.3d 47, 68 (2d Cir. 2009) ("Where we identify procedural error in a sentence,

41

but the record indicates clearly that the district court would have imposed the same sentence in any event, the error may be deemed harmless, avoiding the need to vacate the sentence and to remand the case for resentencing.") (internal quotation marks omitted). We therefore must remand for resentencing.

Having identified a procedural error that warrants resentencing, we need not address Vargas's alternative argument that the sentence imposed is substantively unreasonable. *See United States v. Tutty*, 612 F.3d 128, 131 (2d Cir. 2010) ("Where there is procedural error, we may remand to the district court for resentencing without proceeding to a substantive review of the original sentence.").

## III. Reassignment of the Case to Another Judge is Unwarranted.

Finally, Vargas requests reassignment to a new judge, arguing that she will not receive a fair hearing from Judge Caproni on remand for resentencing.

"Remanding a case to a different judge is a serious request rarely made and rarely granted." *United States v. Awadallah*, 436 F.3d 125, 135 (2d Cir. 2006). Absent a showing of personal bias on the part of the sentencing judge, we examine the following factors when determining whether a case should be remanded to a different judge:

(1) whether the original judge would reasonably be expected upon remand to have substantial difficulty in putting out of his or her mind previously-expressed views or findings determined to be erroneous or based on evidence that must be rejected[;]
(2) whether reassignment is advisable to preserve the appearance of justice[;] and
(3) whether reassignment would entail waste and duplication out of proportion to any gain in preserving the appearance of fairness.

*United States v. Robin*, 553 F.2d 8, 10 (2d Cir. 1977).

Vargas argues that the first factor weighs in favor of reassignment because Judge Caproni made statements suggesting she did not approve of the plea agreement and because she did not "honor" the government's position that the timeliness of Vargas's plea saved the government resources. Appellant Br. 40-41. However, as discussed above, Judge Caproni was not required to grant the government's motion. And, although she erred by failing to grant sufficient deference to the government's representations, reassignment is not ordinarily "warranted merely because a sentencing judge has been shown to have held erroneous views." *United States v. Brennan*, 395 F.3d 59, 76 (2d Cir. 2005) (internal quotation marks omitted). Nor are we persuaded that the comments Judge Caproni made during the sentencing hearing demonstrate that this is the "rare

43

instance in which the judge's fairness or the appearance of the judge's fairness is seriously in doubt." *United States v. Bradley*, 812 F.2d 774, 782 n.9 (2d Cir. 1987).

Vargas further argues that reassignment will preserve the appearance of justice, as Judge Caproni's decision to "disregard the Government's recommendation" will discourage defendants from pleading guilty because they will be unable to "place reasonable reliance on the terms of a plea agreement." Appellant Br. 42. This argument is unavailing because, as Vargas recognizes, the district court has significant discretion in determining the appropriate sentence and is "not bound by the estimated range in a plea agreement." *United States v. Hamdi*, 432 F.3d 115, 124 (2d Cir. 2005) (internal quotation marks omitted). Judge Caproni informed Vargas of this at her change-of-plea hearing and warned her that any attempts by her "attorney or anyone else" to predict her sentence could be wrong. App'x 32-33. Although a sentencing judge must calculate the recommended guideline range accurately, and commits error by misconstruing or misapplying the Guidelines, she nevertheless retains broad discretion in imposing a sentence in accordance with the principles of sentencing expressed in 18 U.S.C. § 3553(a), subject only to limited review for substantive reasonableness.

That a defendant believes that the assigned judge takes a harsher view of her case than another judge might is not a reason to reassign the case.

Finally, reassigning the case would "entail waste and duplication out of proportion to any gain in preserving the appearance of fairness," *Robin*, 553 F.2d at 10, because Judge Caproni has presided over numerous proceedings in the case, including Vargas's change-of-plea hearing and the two-day evidentiary hearing on her suppression motion, and is familiar with all of the facts of this case.

We are confident that, on remand, Judge Caproni will resentence Vargas consistently with the interpretation of the Guidelines set forth in this opinion and the purposes of sentencing expressed in § 3553(a). We therefore do not direct the case to be reassigned.

## CONCLUSION

For the foregoing reasons, we REMAND the case and instruct the district court to VACATE its judgment and resentence the defendant.