24-1461
*United States v. Powell*

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

**<ins>SUMMARY ORDER</ins>**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 29th day of October, two thousand twenty-five.

PRESENT:
 PIERRE N. LEVAL
 GERARD E. LYNCH,
 RICHARD J. SULLIVAN,
  *Circuit Judges.*

—————————————————————————

UNITED STATES OF AMERICA,

  *Appellee,*

 v.                                              24-1461

MARIO POWELL,

  *Defendant-Appellant.*

—————————————————————————

**For Appellee:** THOMAS JOHN WRIGHT (Chelsea L. Scism, Michael D. Maimin *on the brief*), Assistant United States Attorneys, *for* Jay Clayton, United States Attorney for the Southern District of New York, New York, NY.

**For Defendant-Appellant** DONNA R. NEWMAN, Law Offices of Donna R. Newman, PA, New York, NY.

Appeal from a judgment of the United States District Court for the Southern District of New York (Paul A. Engelmayer, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment is **AFFIRMED**.

Mario Powell appeals from his conviction after a jury trial on charges of Hobbs Act robbery, in violation of 18 U.S.C. §§ 1951 and 2, and using a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. §§ 924(c)(1)(A) and 2, for which the district court imposed an aggregate sentence of 288 months' imprisonment. On appeal, Powell argues that his section 924(c) conviction must be vacated because Hobbs Act robbery is not a crime of violence; he also contends that the district court erroneously admitted certain evidence at trial and that it imposed a procedurally and substantively unreasonable sentence. We assume the

parties' familiarity with the underlying facts, procedural history, and issues on appeal, to which we refer only as necessary to explain our decision.

## I. Section 924(c) Challenge

Powell urges us to vacate his section 924(c) conviction because Hobbs Act robbery is not a crime of violence. *See* 18 U.S.C. § 924(c)(1)(A). But, as Powell concedes, our precedents squarely foreclose that argument. *See* Powell Br. at 57–58 (citing *United States v. Barrett*, 102 F.4th 60, 81 (2d Cir. 2024), *cert. granted on other grounds*, 145 S. Ct. 1307 (2025)); *see also United States v. McCoy*, 58 F.4th 72, 74 (2d Cir. 2023), *cert. denied*, 144 S. Ct. 115 (2023), *and cert. denied sub nom. Nix v. United States*, 144 S. Ct. 116 (2023).

## II. Evidentiary Challenges

Powell next argues that he was deprived of a fair trial because the district court improperly admitted (1) a compilation of surveillance videos taken near the scene of the robbery and shooting alleged in the indictment, and (2) evidence of his mother's excited utterance and identification of Powell after seeing a news report that showed a surveillance video following the shooting. We disagree.

"We review a district court's evidentiary rulings under a deferential abuse of discretion standard and will disturb its rulings only where the decision to admit

3

or exclude evidence was manifestly erroneous." *United States v. Skelos*, 988 F.3d 645, 662 (2d Cir. 2021) (internal quotation marks omitted). For challenges under Federal Rules of Evidence 401 and 403, that standard is particularly "deferential in recognition of the district court's superior position to assess relevancy and to weigh the probative value of evidence against its potential for unfair prejudice." *United States v. Coppola*, 671 F.3d 220, 244 (2d Cir. 2012).

### A. Compilation of Surveillance Videos

The district court permitted the government to introduce a compilation of surveillance videos marked Exhibit 310. That exhibit sequenced and spliced together nine previously admitted videos from various cameras that showed Powell near the scene of the crime. The compilation was also edited to speed up, slow down, and freeze frame certain portions of the videos; it likewise included blank slides between the respective clips to signify where the original exhibits began and ended.

Powell contends that Exhibit 310 is not relevant because "the jury did not need [it] to understand the evidence." Powell Br. at 36. But "need" is not the standard by which courts measure relevance. Rather, evidence is relevant if it has "*any* tendency to make a fact more or less probable[.]" Fed. R. Evid. 401 (emphasis

4

added); *see Old Chief v. United States*, 519 U.S. 172, 179 (1997) ("Nor [is] evidentiary relevance under Rule 401 affected by the availability of alternative proofs of the element to which it went[.]").  Exhibit 310 meets that standard because, as the district court concluded, it tends to "materially assist the jury in its central function of determining the truth in [this] case, which turns on identification," an "exercise [that] would be considerably harder were the videos" – which were in some cases only seconds long  – "presentable only separately[.]"  App'x at 137.

Powell also argues that Exhibit 310's "probative value [was] substantially outweighed by a danger of . . . unfair prejudice[.]"  Fed. R. Evid. 403.  Powell challenges neither the admissibility of the videos underlying Exhibit 310 nor the government's ability to present those videos in an enhanced compilation.  *See* Powell Br. at 36; Reply Br. at 13 ("Powell has not argued that the enhancement itself . . . was improper[.]").  Instead, he claims that Exhibit 310 "improperly summarized the evidence against [him] mid-trial."  Powell Br. at 38.

Powell appears to rely on *United States v. Yakobowicz*, where we disapproved of a district court's allowance of "argumentative interim summations" in a criminal case.  427 F.3d 144, 154 (2d Cir. 2005); *see* Powell Br. 39; Reply Br. at 10, 13–14.  But *Yakobowicz* involved a "trial management issue" – not an evidentiary

5

objection. 427 F.3d at 150. The district court there had adopted a "procedure that systematically allowed argumentative summations after each witness . . . without any attempt to limit the argumentative aspects of the interim summations." *Id.* at 154. We disapproved of this novel process, explaining that such "[i]nterim summations after each witness enable[d] the prosecution to argue repeatedly the merits of its theory of the case." *Id.* at 152.

Here, by contrast, the district court admitted a single exhibit after ensuring that the government would "use care in describing [it]" and would not "describe the person in the videos as the defendant," or even as the "robbery suspect." App'x at 138. The district court also instructed the jury that the sequencing of the videos merely reflected "the government['s] conten[tion]," and that it would have to decide for itself "whether the videos [we]re in correct sequence and whether the person depicted in any or all of them [wa]s the person who committed the robbery and the shooting[.]" App'x at 154; *see United States v. Pitre*, 960 F.2d 1112, 1120 (2d Cir. 1992) (holding no unfair prejudice given "proper limiting instructions").[1]

We see no error and reject Powell's contention that the exhibit had prejudicial impact exceeding its probative value. *See, e.g., United States v. Gahagen*,

---

[1] Powell argues that "[b]y instructing the jury that [Exhibit 310] was the [g]overnment's theory of the case" without simultaneously describing the defense's theory, the district court improperly

6

44 F.4th 99, 105 (2d Cir. 2022) ("The government presented excerpts from one of the bank's surveillance videos . . . . In response, the defense presented a composite of other bank surveillance footage[.]").

## B. Powell's Mother's Identification

Powell also argues that the district court improperly permitted Powell's then-brother-in-law, Terrence Hibbert, to testify about Powell's mother's reaction when she recognized Powell in the surveillance footage that was broadcast on a Bronx 12 newscast about the shooting of Jeffrey Cisnero Camacho. Powell argues that this testimony – in which Hibbert described Powell's mother as "crying and upset" when she recognized her son as the person in the video – violated Rule 403 because it "served no purpose other than to emphasize emotion." Powell Br. at 43 (internal quotation marks omitted). But emotional context can validly influence a jury's reasoning because "[a] statement that has been offered in a moment of excitement – without the opportunity to reflect on the consequences of one's exclamation – may justifiably carry more weight with a trier of fact than a similar

---

"gave its imprimatur to the [g]overnment's theory[.]" Reply Br. at 17. But Powell cites no caselaw to support this argument, and he himself solicited a limiting instruction on the subject and did not object to the instruction that the district court ultimately gave at trial. In any event, the district court did not unfairly endorse the government's theory of the case; on the contrary, it cautioned the jury not to take Exhibit 310 at face value.

statement offered in the relative calm of the courtroom." *White v. Illinois*, 502 U.S. 346, 356 (1992). Because the testimony related to Powell's mother's excited utterance, in which she had confirmed that the person shown on the televised video as the shooter fleeing the scene was her son Powell, the district court properly concluded that evidence of Powell's mother's reaction "contextualize[d] her statements and enable[d] the jury to better assess whether her realtime identification should [have] be[en] credited." App'x at 51.

### III. Sentencing Challenges

Powell also contends that his sentence was both procedurally and substantively unreasonable. Again, we disagree.

"We review a district court's sentencing decision for procedural and substantive reasonableness, using a deferential abuse-of-discretion standard." *United States v. Vargas*, 961 F.3d 566, 570 (2d Cir. 2020) (internal quotation marks omitted). That standard "incorporates *de novo* review of questions of law (including interpretations of the Guidelines) and clear-error review of questions of fact." *Id.* (internal quotation marks omitted).

## A. Procedural Reasonableness

As relevant here, "[a] district court commits procedural error" if it (1) "does not consider the . . . factors [laid out in 18 U.S.C. § 3553(a)]," (2) "rests its sentence on a clearly erroneous finding of fact," *United States v. Cavera*, 550 F.3d 180, 190 (2d Cir. 2008), or (3) "select[s] a sentence in violation of applicable law," *United States v. Crosby*, 397 F.3d 103, 114 (2d Cir. 2005).

Powell argues that the district court "inadequately considered the [section] 3553(a) factors" and committed "factual error" by failing to recognize that Powell's mental illness "contribute[d] to his offense." Powell Br. at 52. But the district court *did* take account of Powell's mental illness, describing it as "[f]ar and away[] the most important" mitigating factor because it stunted Powell's "decision-making abilities the night of the robbery." App'x at 276–78. The district court nevertheless concluded that Powell did not have a such a "severe . . . mental disease" that he was "unable to appreciate the nature and quality or wrongfulness of [his] act," and that Powell's choices to flag the victim's car, "stop him at a remote area," "rob him," "shoot him," and "slow down and not attract attention when [he] encountered the police" all "be[spoke]" "a mentally functional, if also damaged,

9

mind." *Id.* at 276–277. This reasonable factual finding did not amount to clear error.

Powell also argues that the district court unlawfully took his "failure to plead guilty into consideration as a reason to impose a higher sentence[.]" Powell Br. at 56. He contends that section 3E1.1 of the Sentencing Guidelines – which provides for up to a three-level credit for defendants who accept responsibility and plead guilty in advance of trial – "burdens the Sixth Amendment right" to trial. Powell Br. at 54. That argument, however, elides the "distinction between *increasing* the severity of a sentence for a defendant's failure to cooperate and refusing to grant *leniency*." *United States v. Whitten*, 610 F.3d 168, 195 (2d Cir. 2010) (internal quotation marks omitted). In light of this distinction, "[w]e have long held that a district court may properly treat a guilty plea as a recognition of fault and that [a] show of lenience to those who exhibit contrition by admitting guilt does not carry a corollary that the [j]udge indulges a policy of penalizing those who elect to stand trial." *United States v. DiMassa*, 117 F.4th 477, 484 (2d Cir. 2024) (internal quotation marks omitted).

Here, the district court did not penalize Powell for refusing to plead guilty – in fact, it explained that it was Powell's "prerogative under our Constitution" to

go to trial, that he was "presumed innocent," and that he "had no duty to say anything or admit anything." App'x at 281. The district court simply "refus[ed] to grant *leniency*," *Whitten*, 610 F.3d at 195 (internal quotation marks omitted), when it explained that Powell would not receive credit for accepting responsibility for his crimes, App'x at 281.

## B. Substantive Reasonableness

Powell also challenges the substantive reasonableness of his sentence. A sentence is substantively unreasonable if it is "shockingly high, shockingly low, or otherwise unsupportable as a matter of law." *United States v. Rigas*, 583 F.3d 108, 123 (2d Cir. 2009). Defendants "bear[] a heavy burden because our review of a sentence for substantive reasonableness is particularly deferential." *United States v. Broxmeyer*, 699 F.3d 265, 289 (2d Cir. 2012). When reviewing a sentence that "substantial[ly] deviat[es] from the Guidelines range," we ask whether the district court "abused [its] discretion in determining that the [section] 3553(a) factors . . . justified" such a sentence. *Gall v. United States*, 552 U.S. 38, 56 (2007).

Powell first contends that the district court "minimized the overwhelming evidence of [his] mental illness[.]" Powell Br. at 50. But, as discussed above, the district court considered that illness as "a significant mitigating factor," App'x at

11

278, and "[t]he particular weight to be afforded aggravating and mitigating factors is a matter firmly committed to the discretion of the sentencing judge," *Broxmeyer*, 699 F.3d at 289 (internal quotation marks omitted).

Powell next argues that his sentence on the Hobbs Act robbery count, which fell "90 months above the high end of the calculated Guidelines range," "dramatic[ally] deviat[ed]" from that range. Powell Br. at 52. "[A] sentence outside the Guidelines," however, "carries no presumption of unreasonableness," *Irizarry v. United States,* 553 U.S. 708, 714 (2008), and here the district court adequately justified its upward variance from the Guidelines range. In weighing the section 3553(a) factors, the court determined that Powell's crime was "one of the most horrifying, shocking, and dastardly offenses" that it had ever been called upon to sentence. App'x at 281. And while the district court acknowledged that Powell was not a repeat offender, it emphasized that the public had a strong interest in incapacitating him because he had engaged in "a pattern of violence while in custody" awaiting trial. *Id.* at 275. It then considered mitigating circumstances, including Powell's mental health issues, his difficult years in pretrial confinement during the COVID-19 pandemic, and the hardships associated with his immigration to the United States. Though the district court

found that these factors would significantly reduce Powell's sentence, it emphasized that Powell's crime was "vicious" and "gratuitous," that "[i]t did extraordinary and permanent damage to a good man who was just doing his job for his family," and that Powell "shot a helpless, innocent man nine times who was begging for his life in the name of his daughters." *Id.* at 281–82. Given the severity of this crime, the district court reasonably concluded that the calculated range "badly understate[d] the seriousness" of Powell's offense, which, "in human terms, . . . [was] an attempted murder," not merely a run-of-the-mill robbery. *Id.* at 271; *cf.* U.S.S.G. § 2A2.1 (higher range for attempted murder resulting in permanent bodily injuries). In sum, the district court adequately justified its decision to vary upwards from Powell's Guidelines calculation, and given the circumstances of the offense, we cannot say that it was substantively unreasonable to impose a 168-month sentence on the Hobbs Act charge.

\* \* \*

We have considered Powell's remaining arguments and conclude that they are without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court.

13