*United States v. Overton*

# United States Court of Appeals
## For the Second Circuit

August Term 2021

Argued: January 18, 2022
Decided: February 3, 2022

No. 21-76

UNITED STATES OF AMERICA,

*Appellee*,

*v.*

MARCELLUS OVERTON,

*Defendant-Appellant*.

Appeal from the United States District Court
for the Western District of New York
No. 15-cr-009, William M. Skretny, *Judge*.

Before:      KEARSE, WALKER, AND SULLIVAN, *Circuit Judges*.

Marcellus Overton appeals from the judgment of conviction entered by the district court (Skretny, *J.*) on January 6, 2021, following Overton's plea of guilty to one count of conspiracy to commit sex trafficking of a minor, in violation of 18 U.S.C. § 1594(c). On appeal, Overton argues that the district court erred in denying his motion to withdraw his guilty plea, which was entered pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C). Specifically, Overton asserts that because the court had only "provisionally" accepted his guilty plea, it should have allowed him to unconditionally withdraw that plea under Federal Rule of Criminal

Procedure 11(d)(1) rather than requiring a "fair and just" reason for withdrawal under Rule 11(d)(2); he further argues that, even if the Rule 11(d)(2) standard applies, the court erred in determining that he lacked a "fair and just" reason for withdrawal because his motion to withdraw was based on a *Brady* violation. Overton also asserts that he received ineffective assistance of counsel in connection with his motion to withdraw his plea.

This appeal requires us to answer two related questions: First, what standard of review should we apply in assessing whether a district court has "accepted" a guilty plea? Second, did the district court's "provisional" acceptance of Overton's guilty plea entered pursuant to Rule 11(c)(1)(C) constitute "acceptance" for the purposes of Rule 11? With respect to the first question, we hold that acceptance of a guilty plea must be reviewed de novo. As to the second question, we conclude that although the district court's use of the term "provisional" was imprecise, the totality of the record reflects that the court *did* accept Overton's guilty plea prior to his motion to withdraw that plea. The district court was therefore correct to apply the Rule 11(d)(2) standard in considering Overton's motion to withdraw his plea after determining that he had not established a *Brady* violation, and the court committed no error in denying the motion to withdraw. Finally, we conclude that Overton's ineffective assistance claim – which is based on his counsel's failure to adequately address the issues that Overton now raises on appeal – fails for lack of prejudice. Accordingly, we **AFFIRM** the judgment of the district court.

AFFIRMED.

MATTHEW W. BRISSENDEN, Matthew W. Brissenden, P.C., Garden City, NY, *for Defendant-Appellant* Marcellus Overton.

MONICA J. RICHARDS, Assistant United States Attorney, *for* Trini E. Ross, United States Attorney for the Western District of New York, Buffalo, NY, *for Appellee* United States of America.

RICHARD J. SULLIVAN, *Circuit Judge*:

Marcellus Overton appeals from the judgment of conviction entered by the district court on January 6, 2021, following Overton's plea of guilty to one count of conspiracy to commit sex trafficking of a minor, in violation of 18 U.S.C. § 1594(c). On appeal, Overton argues that the district court erred in denying his motion to withdraw his guilty plea, which was entered pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C). Specifically, Overton asserts that because the court had only "provisionally" accepted his plea, it should have unconditionally allowed him to withdraw that plea under Federal Rule of Criminal Procedure 11(d)(1), rather than requiring a "fair and just" reason for withdrawal under Rule 11(d)(2); he further argues that, even if Rule 11(d)(2) applies, the district court erred in denying his motion to withdraw because that motion was based on a *Brady* violation. Finally, Overton contends that he received ineffective assistance of counsel in connection with his motion to withdraw his guilty plea.

To address Overton's challenges on appeal, we must answer two questions: First, under what standard should we review whether a district court has "accepted" a guilty plea for the purposes of Rule 11? Second, did the district court's "provisional" acceptance of Overton's guilty plea entered pursuant to Rule 11(c)(1)(C) constitute "acceptance" under Rule 11? With respect to the first

2

question, we hold that de novo review is required. As to the second question, we conclude that although the district court's use of the term "provisional" was imprecise, the totality of the record reflects that the court *did* accept Overton's guilty plea prior to his motion to withdraw that plea. The court was therefore correct to apply Rule 11(d)(2) in considering Overton's motion to withdraw his guilty plea after determining that no *Brady* violation had occurred. We further conclude that the district court committed no error in denying Overton's motion to withdraw his plea under Rule 11(d)(2). Consequently, we find that Overton's ineffective assistance claim – which essentially repackages the arguments that he now makes on appeal – fails for lack of prejudice. We therefore affirm the judgment of the district court.

## I. Background

In 2014, Overton pleaded guilty in Cheektowaga Town Court to engaging in the sex trafficking of a seventeen-year-old victim ("Victim 1") on January 18, 2013. Overton had been arrested following an investigation that involved a sting operation in which he drove Victim 1 to a prostitution appointment with an undercover officer. In January 2015, a federal grand jury indicted Overton for trafficking Victim 1 between December 2012 and March 2013, including his

conduct on January 18, 2013.[1]

Following extensive pretrial litigation and two adjournments of his trial date, Overton waived indictment and pleaded guilty pursuant to a plea agreement on November 26, 2018 – the day before his trial was set to start – to a superseding information that charged him with one count of conspiracy to commit sex trafficking of a minor, in violation of 18 U.S.C. § 1594(c).  Importantly, Overton pleaded guilty under Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, which permits a defendant to plead guilty pursuant to a plea agreement that provides "a specific sentence or sentencing range" that will bind the court once the court accepts the agreement; in the event the court rejects the sentence specified in that agreement, Rule 11(c)(5) requires the court to give the defendant an opportunity to withdraw his guilty plea.  According to the plea agreement, Overton and the government stipulated to a sentencing range of 90–213 months' imprisonment.

At his plea colloquy, Overton admitted that between December 2012 and March 2013, he transported Victim 1 from Olean, New York, to Niagara Falls, New

---

[1] Overton faced a mandatory minimum term of ten years' imprisonment for the charges in that indictment.  *See* 18 U.S.C. § 1591(b)(2).

4

York, and conspired to solicit prostitution appointments for Victim 1 through online advertisements. He further admitted that he had rented or arranged for the rental of hotel rooms and transported or arranged for the transportation of Victim 1 to appointments for prostitution, and that he received a share of Victim 1's earnings from prostitution activities. Overton ultimately entered his guilty plea, and the district court "provisionally accept[ed]" that plea and "adjudge[d]" Overton guilty. App'x at 300. The court then scheduled Overton's sentencing for March 20, 2019.

About five months after entering his guilty plea on November 26, Overton moved to adjourn his sentencing and expressed to the district court that he was contemplating a motion to withdraw his plea because he believed that the government had withheld exculpatory evidence and because he was frustrated with his counsel for failing to uncover this misconduct. The district court appointed conflict counsel to assist Overton in connection with his contemplated motion to withdraw his plea.

After meeting with Overton's conflict counsel, the government agreed to voluntarily produce additional discovery requested by Overton. Included among the materials produced by the government were handwritten notes prepared by a

5

non-testifying federal agent summarizing her interview of a government witness who had engaged in the prostitution scheme with Overton.[2]  Overton then filed a motion to compel additional discovery, which the district court granted in part and denied in part.

After the district court set a date for sentencing, Overton's counsel moved to withdraw as his attorney, so the court pushed back the sentencing date and assigned new counsel.  About one month later, Overton moved to withdraw his plea.  In support of this motion, Overton asserted that the federal agent's interview notes contained exculpatory information that the government had been obligated to produce under *Brady v. Maryland*, 373 U.S. 83 (1963), and suggested that the government had tricked him into pleading guilty by intentionally withholding those notes.

The district court ultimately denied Overton's motion to withdraw his guilty plea, concluding that Overton had not provided a "fair and just reason" for

[2] These notes indicated that the government witness denied working as a prostitute for Overton and asserted that Overton did not receive payment from the prostitutes; she did, however, suggest that Overton drove other prostitutes for money, and she could not explain why Overton had paid for online ads promoting prostitutes.  In her subsequent grand jury testimony, this same witness contradicted many of the statements that she had made in her interview with the federal agent and admitted that Overton had indeed prostituted her.  The witness also testified that Overton had contacted her sister and then-boyfriend to discourage her from testifying before the grand jury.

withdrawing his plea because the government had not committed a *Brady* violation or otherwise engaged in prosecutorial misconduct, and no other factors warranted withdrawal of the plea. App'x at 835–47. The court then sentenced Overton to a ninety-month term of imprisonment to be followed by five years of supervised release. This appeal followed.

## II. Discussion

Overton argues that the district court should have allowed him to withdraw his plea under Federal Rule of Criminal Procedure 11(d)(1) because the court had only "provisionally" accepted his plea on November 26, 2018, and did not "formally" accept his guilty plea prior to his motion to withdraw. Under Rule 11(d)(1), "[a] defendant may withdraw a plea of guilty . . . before the court accepts the plea, for any reason or no reason." Because Overton did not make this argument below, we review this issue for plain error. *See United States v. Groysman*, 766 F.3d 147, 155 (2d Cir. 2014).

Normally, "[w]e review a district court's denial of a motion to withdraw a guilty plea for abuse of discretion and any findings of fact in connection with that decision for clear error." *United States v. Rivernider*, 828 F.3d 91, 104 (2d Cir. 2016) (citation omitted). Here, however, we must also determine the applicable

7

standard of review for the "antecedent question" of whether the district court should have considered the motion to withdraw the guilty plea under Rule 11(d)(1) or 11(d)(2) – a question that turns on whether the court had, in fact, accepted the guilty plea before the defendant filed the motion to withdraw. *United States v. Andrews*, 857 F.3d 734, 739 (6th Cir. 2017). Although our analysis may involve a detailed review of the district court record, the "central legal issue" is whether the district court correctly interpreted Rule 11 in determining that it had "accepted" the defendant's guilty plea prior to the motion to withdraw the plea. *United States v. Byrum*, 567 F.3d 1255, 1259 (10th Cir. 2009). We therefore conclude – like multiple circuits to have answered this question before us – that "de novo review is [the] more appropriate standard" for this inquiry. *Id.*; *see also, e.g.*, *Andrews*, 857 F.3d at 739; *United States v. Jones*, 472 F.3d 905, 908–09 (D.C. Cir. 2007) (applying de novo review to determine whether district court accepted defendant's guilty plea).

Considered in its entirety, the record plainly reflects that the court had accepted Overton's plea – but deferred decision on his plea agreement – prior to his motion to withdraw. Throughout the plea colloquy, the court referred to Overton's plea as a "[Rule] 11(c)(1)(C) plea." App'x at 282. As noted above, when

a defendant pleads guilty pursuant to Rule 11(c)(1)(C), a district court may accept the guilty plea while deferring acceptance of the plea agreement and its stipulated sentence until it reviews the defendant's presentence report ("PSR"). *See* Fed. R. Crim. P. 11(c)(3)(A); *United States v. Hyde*, 520 U.S. 670, 674 (1997) ("Guilty pleas can be accepted while plea agreements are deferred, and the acceptance of the two can be separated in time."). And if the court then rejects the sentencing range provided in the plea agreement, the court must give the defendant an opportunity to withdraw his guilty plea. *See* Fed. R. Crim. P. 11(c)(5).

At Overton's plea hearing on November 26, 2018, the district court explained this process to Overton, informing him that he could withdraw his Rule 11(c)(1)(C) plea only if the court determined that it could not sentence him within the range set out in his plea agreement:

> [W]hat the 11(c)(1)(C) plea does is give you this opportunity, which doesn't take place in the normal plea arrangement, and that is if I determine that I can not sentence you within this range because, for some reason, I don't view it to be a reasonable sentence under the circumstances, you get the opportunity to withdraw your plea of guilty under that circumstance. If I determine this plea agreement, and with that spread, as far as sentencing is concerned, to be reasonable, then what I will do is make the provisional acceptance, and, again, it's an acceptance but it's provisional, and I'll finalize it and then we'll proceed forward and then

sentencing will be at my discretion within the range stated here.

App'x at 294.

And while the court stated several times that it was "provisionally" accepting Overton's plea, it made clear that the provisional nature of its acceptance was tied to its determination that it could sentence Overton according to the terms of his plea agreement. Indeed, the court told Overton that his plea

> is a different type of plea and it's not the normal plea, it's what is referenced as an 11(c)(1)(C) plea, which [means that] if everything goes according to script, I will be accepting your plea provisionally, which means not with finality because there is one step that has to be entered into and completed before I accept it in its totality. I will accept it, but provisionally, because the provisional part comes with my determining that I can sentence you according to the terms and conditions of the plea agreement.

*Id.* at 282. Later in the plea colloquy, just before asking Overton for his plea, the court again informed Overton that if he pleaded guilty, the court could "accept [his] plea provisionally until" it obtained his PSR and determined "whether or not the range proposed in [his plea agreement was] reasonable and sufficient, but not greater than necessary." *Id.* at 298. Only then did Overton enter his plea of guilty,

10

after which the court "provisionally accept[ed]" the plea and "adjudge[d him] guilty, provisionally," of the crime to which he had pleaded. *Id.* at 298–300.

The district court made all of these statements to Overton in the context of a full plea colloquy as required by Rule 11(b). The court placed Overton under oath and confirmed that he knew that he had a right to plead not guilty, and that by pleading guilty he was giving up his right to a jury trial. The court made sure that Overton understood the nature of the offense with which he was charged, and that if he proceeded to trial, the government would be required to prove each element of that crime beyond a reasonable doubt. The district court also confirmed that Overton understood the maximum potential sentence that he faced under the statute to which he was pleading guilty and, more importantly, the stipulated sentencing range under the plea agreement that he entered into with the government pursuant to Rule 11(c)(1)(C). The court explained its obligation to calculate and consider the applicable sentencing range under the United States Sentencing Guidelines, among other sentencing factors, and the fact that the court was obligated to impose a special assessment and a term of supervised release that might include various conditions. The court also advised Overton of his right to counsel for the entirety of his case and further confirmed that Overton was aware

11

that he was giving up his right to appeal a sentence within or below the sentencing range provided in his plea agreement.[3] *See* Fed. R. Crim. P. 11(b). The court then found that Overton had knowingly and voluntarily entered his plea, and that the information set forth in the factual basis statement would serve as a sufficient basis to conclude that "each of the essential elements comprising" the crime to which Overton pled guilty "has been satisfied by the proof standard beyond a reasonable doubt." App'x at 299–300. Finally, the court "provisionally" accepted Overton's plea and adjudged him guilty before scheduling his sentencing for March 20, 2019. *Id.* at 300.

Overton nevertheless argues that the district court did not actually accept his plea until two years after his plea allocution, in a written order dated November 25, 2020. But the text of that order makes clear that the court had only

---

[3] It is not clear from the record whether the district court informed Overton of his right to confront and cross-examine adverse witnesses at trial, to be protected from compelled self-incrimination, to testify and present evidence, and to compel the attendance of witnesses – or the fact that he would waive these rights if the court accepted his guilty plea – as required by Rule 11(b)(1)(E) and (F). We reiterate that "compliance with Rule 11 is not a difficult task, and district courts can easily use a standard script for accepting guilty pleas, which covers all of the required information to ensure their conformity with the Rule." *United States v. Gonzales*, 884 F.3d 457, 462 (2d Cir. 2018) (internal quotation marks). Further, both prosecutors and defense counsel have an obligation to ensure the court's compliance with Rule 11. *Id.* Nevertheless, here Overton does not argue that his plea allocution was deficient for lack of this information; in fact, his briefs do not mention this potential error at all. The only Rule 11 arguments he raises are that the district court did not accept his plea before his motion to withdraw, or – in the alternative – that he provided a fair and just reason to withdraw his plea pursuant to Rule 11(d)(2).

deferred acceptance of Overton's plea *agreement*: in the order, the court clarifies that, "[h]aving fully reviewed the presentence investigation report," it "now *accepts the parties' Rule 11(c)(1)(C) sentencing agreement* pursuant to Rule 11(c)(4) and finds that a sentence within the agreed upon disposition of 90–213 months' imprisonment will constitute a fair, just, and reasonable sentence." App'x at 846 (emphasis added).[4] The record also reflects that the district court made other statements indicating that it had accepted Overton's plea on November 26, 2018. For example, during a post-plea status conference on September 11, 2019, the court stated that Overton's plea had been entered almost ten months ago, and that the plea "was accepted." App'x at 366; *see id.* at 351. In another status conference on

---

[4] During oral argument, Overton's counsel argued for the first time that the district court's refusal to revoke Overton's bail following the plea proceeding demonstrated that it had not truly accepted Overton's plea. Counsel asserted that the crime of conviction required a mandatory remand following a guilty plea and that even the government expressed a belief at that time that the court would "continue the defendant on his current bond" because of "the provisional nature of the plea and Probation's recommendation." App'x at 301–02. But that misconstrues the record. Although the district court did indeed continue Overton on his bond at the conclusion of the plea hearing, it never stated – or even suggested – that its decision was based on the provisional nature of Overton's plea. Rather, the court indicated that it did not consider remand to be mandatory based on the charged offense. *See id.* at 302 ("[F]or your information, this is a conspiracy charge, it's not a substantive charge. [And 18 U.S.C. §] 1594 is not enumerated as a crime of violence under the statute. . . . I'm considering that as well in terms of what is reasonable and in terms of the danger to the public as well as the risk of flight."); 18 U.S.C. § 3143; *see also id.* §§ 1591(b)(2), 1594(c), 3142(f)(1), 3156(a)(4).

July 29, 2020, the court noted that "[i]t's approaching two years now, since the plea was accepted." *Id.* at 616; *see id.* at 618.

Because the full record reflects that the district court accepted Overton's plea long before he filed his motion to withdraw, it was not error – let alone plain error – for the court to apply the Rule 11(d)(2) standard and require Overton to provide a "fair and just reason" for withdrawing his plea. *See Hyde*, 520 U.S. at 671 (holding – under Federal Rule of Criminal Procedure 32(e), since replaced by Rule 11(d)(2) – that where a defendant pleads guilty pursuant to a plea agreement, and the district court accepts the plea but defers decision on whether to accept the plea agreement, the "defendant may not withdraw his plea unless he shows a 'fair and just reason'"). While we acknowledge that the district court's use of the term "provisional" in connection with the acceptance of Overton's plea was imprecise – and we encourage courts to more clearly indicate acceptance of a guilty plea even when deferring acceptance of the *plea agreement* under Rule 11(c)(3)(A) – we decline to impose a "magic words" requirement that lacks any basis in Rule 11, ignores the context of a full plea colloquy, and focuses exclusively on the court's use of an unnecessary qualifier. *See United States v. Battle*, 499 F.3d 315, 321–22 (4th Cir. 2007) (explaining that "an unambiguous acceptance" of a guilty plea

14

"prevents confusion" and is permissible even where a district court defers acceptance of the plea agreement). Multiple circuits to have considered similar "provisional" guilty plea acceptances have come to the same conclusion. *See Byrum*, 567 F.3d at 1260–62 (holding that a "district court has accepted [a] plea for the purposes of Rule 11" when it "conducts a Rule 11 plea colloquy and then provisionally or conditionally accepts the defendant's guilty plea pending its review of the PSR"); *Battle*, 499 F.3d at 321 (holding that "provisional[]" acceptance of a guilty plea after a full plea colloquy constituted acceptance under Rule 11 and opining that "[p]lacing too much emphasis on the district court's use of th[at] qualifier . . . would ignore the inherently conditional nature of guilty pleas under Rule 11"); *Jones*, 472 F.3d at 907–09.[5]

---

[5] While some circuits have held that a plea is not accepted where the district court indicates that it is *deferring* acceptance of a guilty plea, we find those cases to be factually distinguishable from the present circumstances. *See, e.g.*, *Andrews*, 857 F.3d at 740–41 (noting that other circuits have reached a consensus "that the decision to 'provisionally' or 'conditionally' accept a guilty plea pending the court's review of the defendant's PSR is enough to establish acceptance," and "that a proper Rule 11 colloquy creates the presumption that a guilty plea was accepted," but finding no acceptance of a guilty plea where the district court "explicitly deferred its acceptance of the plea" after full plea colloquy); *United States v. Head*, 340 F.3d 628, 630–31 (8th Cir. 2003) (concluding that district court did not accept defendant's guilty plea during plea colloquy because the court never expressly stated such acceptance, told the defendant that he would go to trial if it ultimately rejected the plea agreement at sentencing, and further advised the defendant that the government could withdraw from the plea agreement if he committed any new offense *"before [the court] accept[ed] the guilty plea"* (emphasis in original) (citation omitted)).

15

Applying the Rule 11(d)(2) standard, we find that Overton did not present a "fair and just" reason for withdrawal of his guilty plea. *See* Fed. R. Crim. P. 11(d)(2)(B). Overton asserts that prior to his plea, the government failed to disclose witness interview notes from a government agent that constituted exculpatory *Brady* material. Overton further contends that the court should have applied a subjective test – consistent with the Rule 11 standard applied in *United States v. Dominguez Benitez*, 542 U.S. 74 (2004) – rather than an objective test in considering whether there was a reasonable probability that Overton would have withdrawn his plea based on the alleged *Brady* violation. He also argues that the court erred by considering the potential prejudice to the government and minimizing the exculpatory nature of the interview notes.

This Court has previously stated that a district court would lack discretion to deny a motion to withdraw a guilty plea where a *Brady* violation has been established. *See United States v. Avellino*, 136 F.3d 249, 261–62 (2d Cir. 1998) (explaining that the "general [Rule 11(d)(2)] framework is not controlling" where a defendant's motion is based solely on an alleged *Brady* violation). The district court was therefore correct to analyze whether a *Brady* violation had indeed taken

16

place before proceeding to consider Overton's motion to withdraw under Rule 11(d)(2).

Generally, to establish that a *Brady* violation has occurred before a guilty plea, a defendant must show that (1) the government failed to disclose exculpatory evidence, and (2) the evidence was material. *See United States v. Payne*, 63 F.3d 1200, 1208–09 (2d Cir. 1995); *see generally United States v. Ruiz*, 536 U.S. 622, 629 (2002). Materiality is analyzed through an "objective inquiry" which turns, in the plea context, on whether "there is a reasonable probability that but for the failure to produce such information the defendant would not have entered the plea but instead would have insisted on going to trial." *Avellino*, 136 F.3d at 256.

Here, the district court properly reviewed the alleged *Brady* violation under the objective standard described in *Avellino* and correctly determined that the notes at issue were not material. For starters, the notes pertained to only a portion of Overton's charged conduct and derived from an interview with a witness who later contradicted herself, and who was not the sole or main witness regarding the charged conduct. The notes certainly could not have countered the government's strong and direct evidence of Overton's guilt – including (1) law enforcement agents' observation of Overton transporting a minor, Victim 1, to a prostitution

17

appointment that had been arranged using his contact information, (2) Overton's state-court guilty plea, in which he admitted to prostituting Victim 1 on the same day that he was observed by law enforcement, and (3) the testimony of multiple witnesses regarding Overton's participation in the sex trafficking trade. Further, as the district court noted, Overton would have faced significant sentencing exposure had he forgone his "highly favorable plea," and he "offer[ed] no persuasive explanation for why he would have elected to proceed to trial" had he received the interview notes earlier. App'x at 843. In light of these facts, we conclude that there is no reasonable probability that Overton would have proceeded to trial, and thus there was no *Brady* violation.

In addition to concluding that the government had not committed a *Brady* violation that would warrant withdrawal of Overton's guilty plea, the district court determined that the government's failure to produce the interview notes at issue did not constitute *any* form of prosecutorial misconduct. Indeed, even "Overton's conflict counsel, who brokered much of the post-plea voluntary discovery, share[d]" the court's assessment that the government had acted in good faith. App'x at 836.

18

Having rejected Overton's assertions of prosecutorial misconduct – and particularly his *Brady* argument, which served as the basis for his motion to withdraw his plea – the district court then analyzed whether Overton had presented any other potential "fair and just reason" for withdrawal of his guilty plea. The court considered general factors that we have previously recognized as relevant in assessing a motion to withdraw a plea, including (1) whether the defendant asserted his legal innocence in his motion to withdraw; (2) the amount of time between the plea and the motion to withdraw; and (3) whether the government would be prejudiced by withdrawal of the plea. *See United States v. Schmidt*, 373 F.3d 100, 102–03 (2d Cir. 2004). It was not error to consider these factors, nor to find that they weighed against Overton.

First, the court properly concluded that Overton's assertion of legal innocence lacked evidentiary support, both because the alleged *Brady* material was not exculpatory as to all of Overton's charged conduct, and because it was further undermined by his two prior guilty pleas – once at his plea colloquy before the district court, and once in state court. "A claim of innocence can be a basis for withdrawing a guilty plea, but the claim must be supported by evidence. A defendant's bald statements that simply contradict what he said at his plea

19

allocution are not sufficient grounds to withdraw the guilty plea." *United States v.*

*Hirsch*, 239 F.3d 221, 225 (2d Cir. 2001) (internal quotation marks and citation

omitted); *see Adames v. United States*, 171 F.3d 728, 732 (2d Cir. 1999) ("A criminal

defendant's self-inculpatory statements made under oath at his plea allocution

carry a strong presumption of verity and are generally treated as conclusive in the

face of the defendant's later attempt to contradict them." (internal citations and

quotation marks omitted)).

Second, while the district court attributed only the first five months of delay

to Overton when considering the time between his plea allocution in November

2018 and the date when he first raised an issue with his plea in April 2019, this

delay was still substantial. *See United States v. Albarran*, 943 F.3d 106, 123 (2d Cir.

2019) (finding that a four-month lapse between a defendant's guilty plea and his

motion to withdraw supported the district court's discretionary denial of the

motion); *cf. United States v. Doe*, 537 F.3d 204, 213 (2d Cir. 2008) ("Whereas a swift

change of heart may indicate a plea made in haste or confusion, the fact that the

defendant waited five months to file his motion strongly supports the district

court's finding that his plea was entered voluntarily." (internal quotation marks,

citations, and alterations omitted)). Third, we also agree with the court's finding

20

that there would have been prejudice to the government were it to prepare for Overton's trial a third time. *See Albarran*, 943 F.3d at 123. Finding no error in the court's analysis, we conclude that the court did not abuse its discretion in denying Overton's motion to withdraw his guilty plea.

Finally, we consider Overton's ineffective assistance of counsel claim. When addressing an ineffective assistance claim on direct appeal, this Court may "(1) decline to hear the claim, permitting the appellant to raise the issue as part of a subsequent petition for writ of habeas corpus . . . ; (2) remand the claim to the district court for necessary factfinding; or (3) decide the claim on the record before us." *United States v. DeLaura*, 858 F.3d 738, 743 (2d Cir. 2017). Because Overton's ineffective assistance claim rises and falls with his Rule 11(d) and *Brady* arguments, we will address that claim now, without prejudice to Overton's right to bring a habeas petition on different grounds in the future.

To establish ineffective assistance of counsel, a defendant must demonstrate that (1) his counsel's representation "fell below an objective standard of reasonableness," and (2) this deficient performance caused prejudice to the defendant – that is, "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."

21

*Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). Overton contends that his counsel erred when he inadequately argued the purported *Brady* violation and failed to assert in the district court that Overton had a right to unconditionally withdraw his plea under Rule 11(d)(1) – the very arguments that Overton makes on appeal. Because we have already considered and rejected Overton's arguments regarding the applicability of Rule 11(d)(1) and the purported *Brady* violation here, we find that he suffered no prejudice from his counsel's failure to adequately advance these arguments below. Overton's ineffective assistance claim therefore necessarily fails. *See id.* at 697 (noting that "there is no reason for a court deciding an ineffective assistance claim to . . . address both components of the [two-part] inquiry if the defendant makes an insufficient showing on one").

### III. Conclusion

For all these reasons, we **AFFIRM** the judgment of the district court.