21-1158-cr
*United States v. Spear-Zuleta*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 1st day of December, two thousand twenty-two.

PRESENT:
> DENNIS JACOBS,
> RICHARD C. WESLEY,
> JOSEPH F. BIANCO,
> > *Circuit Judges*.

---

UNITED STATES OF AMERICA,

> *Appellee*

> v.                                                               21-1158-cr

ANINHA SPEAR-ZULETA, MARITZA
TORRES, AKA LISY,

> *Defendants,*

RONALD CHRISTOPHER SPEAR-ZULETA,

> *Defendant-Appellant*.

---

| | |
|---|---|
| FOR APPELLEE: | PATRICK J. DOHERTY, Assistant United States Attorney (Marc H. Silverman, Assistant United States Attorney, *on the brief*), *for* Leonard C. Boyle, United States Attorney for the District of Connecticut, New Haven, CT. |
| FOR DEFENDANT-APPELLANT: | JAMES I. GLASSER, Wiggin and Dana LLP, New Haven, CT. |

Appeal from a judgment of conviction of the United States District Court for the District of Connecticut (Hall, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Defendant-appellant Ronald Christopher Spear-Zuleta appeals from a judgment of conviction, entered on April 27, 2021, following his guilty plea to one count of interference with commerce by robbery, in violation of the Hobbs Act, 18 U.S.C. § 1951(a) ("Hobbs Act robbery"). Although Spear-Zuleta subsequently filed two motions to withdraw his guilty plea, the district court denied the motions and sentenced Spear-Zuleta to 135 months of imprisonment, followed by three years of supervised release.

On appeal, Spear-Zuleta argues that his conviction must be vacated because the district court failed to ensure that his guilty plea complied with Federal Rule of Criminal Procedure 11 ("Rule 11"). Specifically, he argues that there was insufficient factual basis for the plea, the district court did not ensure that he understood the nature of the charge, and the government's failure to disclose impeachment evidence concerning a key witness prevented him from entering a knowing and voluntary guilty plea. Spear-Zuleta also contends that the district court erred in applying a one-level enhancement for the taking of a controlled substance during the robbery under the United States Sentencing Guidelines (the "Guidelines"), U.S.S.G. § 2B3.1(b)(6). We assume the parties' familiarity with the underlying facts, the procedural history, and issues on appeal, to which we refer only as necessary to explain our decision to affirm.

### I.   Challenges to the Plea under Rule 11[1]

"Rule 11 sets forth requirements for a plea allocution and 'is designed to ensure that a defendant's plea of guilty is a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *United States v. Andrades*, 169 F.3d 131, 133 (2d Cir. 1999) (quoting *United States v. Renaud*, 999 F.2d 622, 624 (2d Cir. 1993)).  Generally, "[w]e review a district court's denial of a motion to withdraw a guilty plea for abuse of discretion and any findings of fact in connection with that decision for clear error." *United States v. Rivernider*, 828 F.3d 91, 104 (2d Cir. 2016) (internal quotation marks and citation omitted).  However, "where a defendant identified a Rule 11 error in moving to withdraw his guilty plea below, the government bears the burden on appeal of showing, based on the entire record, that the error did not affect the defendant's substantial rights"—that is, that the error was "harmless." *United States v. Freeman*, 17 F.4th 255, 263 (2d Cir. 2021) (quoting *United States v. Johnson*, 850 F.3d 515, 522 (2d Cir. 2017)).

As set forth below, we conclude that Spear-Zuleta failed to identify a Rule 11 error in connection with this guilty plea, and the district court correctly concluded that there was no basis for withdrawal of the plea.  We review each of Spear-Zuleta's Rule 11 challenges in turn.

#### a.   Factual Basis for the Plea

Spear-Zuleta argues that the district court did not comply with Rule 11(b)(3) in accepting his guilty plea because, at the time of the change-of-plea proceeding, there was no factual basis to establish that the robbery impacted interstate commerce, as required under the Hobbs Act.

---

[1]   As the government concedes, although Spear-Zuleta's plea agreement contains an appeal waiver provision, we are not precluded from reviewing his arguments that the district court failed to comply with Rule 11 before accepting the plea. *See, e.g.*, *United States v. Balde*, 943 F.3d 73, 93 (2d Cir. 2019) (holding that "[c]hallenges that typically survive appeal waivers include those asserting that the district court failed to comply with the important strictures of Rule 11" (quoting *United States v. Prado*, 933 F.3d 121, 151 (2d Cir. 2019)).

Under Rule 11(b)(3), a district court must determine that there is a factual basis for the plea before entering judgment. Fed. R. Crim. P. 11(b)(3); *United States v. Pattee*, 820 F.3d 496, 509 (2d Cir. 2016). This rule requires the district court "to assure itself simply that the conduct to which the defendant admits is in fact an offense under the statutory provision under which he is pleading guilty." *United States v. Lloyd*, 901 F.3d 111, 123 (2d Cir. 2018) (internal quotation marks and citation omitted). In making this determination, the district court "is not required to rely solely on the defendant's own admissions." *United States v. Maher*, 108 F.3d 1513, 1524 (2d Cir. 1997). Indeed, the court may rely on statements "of the defendant, of the attorneys for the government and the defense, [or] of the presentence report when one is available . . . ." *Id.* (quoting Fed. R. Crim. P. 11, Advisory Committee Note (1974) (Rule 11(f)); *accord United States v. Smith*, 160 F.3d 117, 121 (2d Cir. 1998). We have noted that "the factual basis for the plea must be developed on the record at the time the plea is taken."[2] *United States v. Adams*, 448 F.3d 492, 502 (2d Cir. 2006); *see also Andrades*, 169 F.3d at 134 ("[T]he district court must place facts on the record at the time of the plea after an inquiry of the defendant, the government, or other available sources of information.").

To establish a Hobbs Act robbery, the government must prove that a defendant "affect[ed] commerce, or to attempt[ed] to do so, by robbery." *See Taylor v. United States*, 579 U.S. 301, 302

---

[2] The government contends that, notwithstanding these cases, our decision in *Lloyd* suggests that a district court's factual basis determination is not limited to the facts at the time of the guilty plea. *See* 901 F.3d at 123 ("Unlike Rule 11(b)(1), which requires that the court advise a defendant of certain matters during a change-of-plea hearing in open court, Rule 11(b)(3) imposes on a district court an obligation that it must satisfy merely '[b]efore entering judgment on a guilty plea,' without any mention of a requirement that the court make its finding on the record." (quoting Fed. R. Crim. P. 11(b)(3))); *see also id.* (explaining that, in making its factual basis determination, "the court was not limited to considering the materials available at the time of the change of plea"). Thus, the government argues that, in addition to the factual basis that existed on the record at the time of Spear-Zuleta's change-of-plea proceeding, the district court could also rely on the evidence adduced at a sentencing hearing to establish the factual basis for the interstate commerce element. However, we need not resolve the tension in our precedent because, as discussed below, we conclude that the district court's factual-basis determination was supported by the facts in the record at the time of Spear-Zuleta's guilty plea.

(2016) (citing 18 U.S.C. § 1951(a)).  The government may show that the robbery affected interstate commerce where a defendant targeted a drug dealer's "drugs or drug proceeds." *Id.* at 310.  "[I]t is enough that a defendant knowingly stole *or attempted to steal* drugs or drug proceeds, for, as a matter of law, the market for illegal drugs is 'commerce over which the United States has jurisdiction.'" *Id.* at 309 (emphasis added).  Accordingly, we have held that a robbery targeting a drug dealer satisfies the interstate commerce element of a Hobbs Act robbery charge even if "no actual drug proceeds were recovered." *See United States v. Lee*, 834 F.3d 145, 155 (2d Cir. 2016) (citing *Taylor*, 579 U.S. at 308).  "[T]he required showing of an effect on interstate commerce is *de minimis*." *United States v. Rose*, 891 F.3d 82, 86 (2d Cir. 2018) (internal quotation marks and citation omitted).

After reviewing the record, we find that the district court did not err in finding a factual basis existed at the time of the plea proceeding for the interstate-commerce element of the Hobbs Act robbery charge.  At the change-of-plea proceeding, Spear-Zuleta admitted that, at his behest, his co-defendants and another individual robbed Robinson's home and took several expensive items that belonged to Robinson.  The government proffered—and Spear-Zuleta did not dispute— that he orchestrated the robbery because he believed that Robinson owed him money for narcotics transactions.  The government further proffered that the robbery affected interstate commerce because the stolen items included drugs and expensive clothes purchased with the proceeds of Robinson's drug sales.  Spear-Zuleta contends that such a factual basis was lacking because his counsel contested the government's proffer that the items stolen during the robbery included drugs, as well as clothing that was purchased with proceeds of drug sales.  Even assuming *arguendo* that defense counsel's statements to the district court at the plea were sufficient to contest the government's proffer that the stolen items included drugs or items that were purchased with the proceeds of drug sales, the district court still had a basis to conclude that the government satisfied

5

the interstate commerce element of the charge because Spear-Zuleta did not dispute that he arranged to rob Robinson—a rival drug dealer—to recoup Robinson's drug debt. *See Lee*, 834 F.3d at 156 (holding that a robbery that targeted a drug dealer affected interstate commerce under the Hobbs Act even though "no drugs or money were recovered" and the robbers left only with a few "bags" of "clothing").

The government, however, only advanced this argument in response to Spear-Zuleta's motion to withdraw the plea. To the extent that we have held that the district court's factual basis determination must rely on *facts* that "already exist on the record or [are] put on the record at the time of the giving of the plea," we have not required that a specific *legal theory* for satisfying a particular element must also be placed on the record at the time of the plea. *Adams*, 448 F.3d at 499 (emphasis omitted). That Robinson was a drug dealer and Spear-Zuleta robbed him to settle a drug trafficking debt was put on the record at the change-of-plea proceeding. Therefore, the district court was entitled to rely on that fact from the change-of-plea proceeding in denying Spear-Zuleta's first motion to withdraw his guilty plea, even though that fact was not identified as an alternative legal basis for the interstate commerce requirement until the government's opposition to that motion.

Accordingly, the district court did not err in concluding that there was adequate factual basis for the Hobbs Act robbery charge at the time of the change-of-plea proceeding.

### b. Understanding the Nature of the Charges

Next, Spear-Zuleta argues that the district court did not comply with Rule 11(b)(1)(G) because it failed to ensure that he understood the nature of the charge before entering the plea. Specifically, he contends that the record from the change-of-plea hearing reflects that he did not understand the interstate commerce element. We disagree.

6

Rule 11(b)(1)(G) provides that, before accepting a guilty plea, a district court "must inform the defendant of, and determine that the defendant understands . . . the nature of each charge to which the defendant is pleading." This rule "is designed to assist the district judge in making the constitutionally required determination that a defendant's guilty plea is truly voluntary." *United States v. Murphy*, 942 F.3d 73, 85 (2d Cir. 2019) (internal quotation marks and citation omitted). Although a district court is "not required to follow any particular formula in satisfying [this] obligation," "a district court judge must personally question the defendant to confirm that he possesses the requisite understanding" of the charge. *See Lloyd*, 901 F.3d at 120 (internal quotation marks and citations omitted). The district court may do so by asking the defendant "whether he understood the nature of the offense to which he was entering a guilty plea," asking "the defendant to describe his participation in the offense," *id.* at 120–21 (internal quotation marks and citations omitted), or requesting "that the government describe the elements of the offense," *Balde*, 943 F.3d at 94.

Here, the district court fully complied with the requirements of Rule 11 in determining that Spear-Zuleta's plea was knowing and voluntary. At the change-of-plea proceeding, Spear-Zuleta confirmed that he had read the indictment charging him with the Hobbs Act robbery and discussed the charge with his counsel. Furthermore, at the district court's request, the government reiterated the elements of the offense and put on the record a summary of the evidence that could support a conviction against Spear-Zuleta. Spear-Zuleta then described his participation in the robbery. The district court twice inquired whether Spear-Zuleta had any questions about the nature of the charge or his rights under the plea agreement. On both occasions, Spear-Zuleta indicated that he had no questions and that he had read and understood the plea agreement and discussed it with his counsel. In denying Spear-Zuleta's second motion to withdraw his guilty plea, the district court concluded that these responses provided sufficient basis to find that he entered the plea knowingly and

7

voluntarily because he did not hesitate to "ask[] the court questions in response to the court's queries at other points during the hearing." Special App'x at 16. Moreover, the district court found that, even though Spear-Zuleta did not unambiguously concede the government's proffer that the stolen items were purchased with the proceeds of Robinson's drug sales, his failure to ratify the government's understanding as to how his conduct satisfied the interstate commerce element of the offense did not raise a significant question about the voluntariness of his guilty plea in light of the record as a whole. We agree that the colloquy regarding factual disputes about certain aspects of the government's proffer does not indicate a lack of understanding by Spear-Zuleta regarding the charge and its elements, especially in light of his failure to ask any questions during that discussion in contrast to his asking of questions during other parts of the hearing. In short, we discern no error in the district court's findings and conclude that it adequately ensured that Spear-Zuleta understood the nature of the charge to which he pleaded guilty and that he voluntarily entered the plea.

### c. Failure to Disclose Impeachment Material

Spear-Zuleta argues that the district court erred in denying his second motion to withdraw the guilty plea because the government's failure to produce certain impeachment evidence concerning Ashley Branham—Robinson's fiancée and the government's key witness—prevented him from knowingly entering the plea. The government failed to timely disclose, pursuant to *Giglio v. United States*, 405 U.S. 150 (1972), that Branham received approximately $11,600 from the State of Connecticut for living and relocation expenses through her participation in Connecticut's witness protection program. Instead, the government revealed that inadvertent nondisclosure to defense counsel and the district court at a status conference over one year after the defendant's guilty plea.

8

"[W]here prosecutors have withheld favorable material evidence, even a guilty plea that was knowing and intelligent may be vulnerable to challenge." *United States v. Avellino*, 136 F.3d 249, 255 (2d Cir. 1998) (per curiam) (internal quotation marks and citation omitted). However, "the Constitution does not require the Government to disclose material impeachment evidence prior to entering a plea agreement with a criminal defendant." *United States v. Ruiz*, 536 U.S. 622, 623 (2002). As the Court explained, "impeachment information is special in relation to the *fairness of a trial*, not in respect to whether a plea is *voluntary* ('knowing,' 'intelligent,' and 'sufficient[ly] aware')." *Id.* at 629 (alteration in original). Although the holding of *Avellino* still stands as it relates to the failure to disclose *Brady* material prior to a guilty plea, *see United States v. Overton*, 24 F.4th 870, 878 (2d Cir. 2022), we have not expressly addressed in a precedential opinion whether our holding in *Avellino* was abrogated by *Ruiz* as it relates to the nondisclosure of impeachment information under *Giglio* prior to a guilty plea. *See, e.g.*, *Friedman v. Rehal*, 618 F.3d 142, 153–54 (2d Cir. 2010) (discussing the effect of *Ruiz* on *Avellino*); *see also Giacobbe v. United States*, 131 F. App'x 316, 316 (2d Cir. 2005) (summary order) ("[W]e note that while the withholding of favorable evidence can provide a basis for challenging a guilty plea [citing *Avellino*], withholding of impeachment material does not provide a basis for such a challenge [citing *Ruiz*]."). However, even assuming *arguendo* that nondisclosure of impeachment information may still serve as a basis for vacating a guilty plea, the district court correctly determined that the information at issue here did not provide such a ground because it was immaterial.

"Materiality is analyzed through an objective inquiry which turns, in the plea context, on whether there is a reasonable probability that but for the failure to produce such information the defendant would not have entered the plea but instead would have insisted on going to trial." *Overton*, 24 F.4th at 878 (internal quotations marks and citation omitted). Although we review a

9

district court's denial of a motion to withdraw a guilty plea for abuse of discretion, whether the alleged suppressed evidence is material is "a mixed question of law and fact," for which we "conduct our own independent examination of the record . . . ." *United States v. Payne*, 63 F.3d 1200, 1209 (2d Cir. 1995) (internal quotation marks and citations omitted). Thus, we "examine the record *de novo* to determine whether the information in question is material as a matter of law," but we give "great weight" to the "trial judge's assessment of the effect of nondisclosure." *United States v. Rowland*, 826 F.3d 100, 112 (2d Cir. 2016) (internal quotation marks and citation omitted).

There is no basis to disturb the district court's conclusion that the information regarding Branham's participation in the witness protection program was not material to Spear-Zuleta's decision to plead guilty. The district court found that the impact of this information on Spear-Zuleta's decision to plead was "very likely minimal" because, if he were to go to trial, "any questions from defense counsel regarding the benefits [Branham] received on account of participation in the Program would likely elicit testimony from [Branham] reinforcing the narrative that [Branham] feared Spear-Zuleta and considered him to be dangerous." Special App'x at 27. Furthermore, the record makes clear that Spear-Zuleta had multiple alternative avenues for attacking Branham's credibility—for example, Branham admitted that she lied to the police when they first questioned her about the robbery and stated that Spear-Zuleta assaulted her, leaving scratches and other marks on her body, even though the police officer who responded to the robbery testified that he did not see any physical marks on Branham. *See Avellino*, 136 F.3d at 257 ("[W]here the undisclosed evidence merely furnishes an additional basis on which to challenge a witness whose credibility has already been shown to be questionable or who is subject to extensive attack by reason of other evidence, the undisclosed evidence may be cumulative, and hence not material." (citation omitted)). Accordingly, on this record, the government's failure to

10

timely disclose impeachment information concerning Branham did not provide a basis for Spear-Zuleta to withdraw his guilty plea.

## II.     Sentencing

Finally, Spear-Zuleta argues that the district court's sentence was procedurally unreasonable because it erred in applying a one-level enhancement for the taking of a controlled substance during the robbery under Section 2B3.1(b)(6) of the Guidelines.

We review a district court's sentencing decision for procedural reasonableness under a deferential abuse-of-discretion standard. *United States v. Vargas*, 961 F.3d 566, 570 (2d Cir. 2020) (internal quotation marks and citation omitted). In doing so, we review the district court's factual findings for clear error and its interpretation of the Guidelines *de novo*. *United States v. Escalera*, 957 F.3d 122, 139 (2d Cir. 2020). "Under the clear error standard, if the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *United States v. Mi Sun Cho*, 713 F.3d 716, 722 (2d Cir. 2013) (internal quotation marks and citation omitted) (alteration adopted). If a district court "erred in determining the applicable Guideline range," the sentence is procedurally unreasonable. *Vargas*, 961 F.3d at 570 (internal quotation marks and citation omitted).

Pursuant to Section 2B3.1(b)(6) of the Guidelines, a district court may apply a one-level enhancement if a "controlled substance was taken, or if the taking of such item was an object of the offense." U.S.S.G. § 2B3.1(b)(6). The facts justifying this enhancement "need be proved only by a preponderance of the evidence." *Escalera*, 957 F.3d at 139 (citation omitted). There is no clear error in the district court's finding that Branham's testimony established by a preponderance of the evidence that cocaine was taken during the robbery and, based upon that finding, no abuse of discretion in applying a one-level enhancement under Section 2B3.1(b)(6) of the Guidelines.

11

At the *Fatico* hearing, Braham testified that one of the individuals who committed the robbery found a bookbag containing cocaine in Robinson's closet and exclaimed "jackpot." J. App'x at 185. Although Branham admitted that she had not seen the contents of the bookbag, she testified that she believed it contained cocaine because she knew that Robinson kept drugs at home. She also explained that the bookbag could not have contained cash because Robinson kept money elsewhere in the house. Additionally, Branham testified that Robinson subsequently told her that the stolen cocaine "was worth $100,000," and that he made an agreement with Spear-Zuleta to trade the stolen cocaine for Robinson's Rolex watch. J. App'x at 186. Branham also testified that Robinson told her that he planned to get insurance money for the watch by falsely reporting that it was "stolen." J. App'x at 190–91. The district court made no clear error in finding Branham's account credible and concluding that her testimony was sufficient to find by a preponderance of the evidence that the robbers took cocaine from Robinson's residence—particularly considering that Robinson was a drug dealer, and Spear-Zuleta orchestrated the robbery to collect a drug trafficking debt that Robinson allegedly owed him. *See United States v. Isiofia*, 370 F.3d 226, 232 (2d Cir. 2004) (instructing that we must afford great deference to the district court's credibility findings because "only the trial judge can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said" (internal quotation marks and citation omitted)).

Spear-Zuleta argues that the district court clearly erred in crediting Branham's account because her testimony that Robinson made an agreement with Spear-Zuleta to exchange his Rolex watch for the stolen cocaine—thus "rekindle[ing] [their] drug business relationship"—was not credible in light of the deterioration of their relationship. *See* Appellant's Br. at 44–45. However, the district court found it plausible that Robinson—a drug dealer—would attempt to recoup the stolen cocaine to protect his narcotics operation. Because the district court's finding is "plausible

12

in light of the record viewed in its entirety" it is not clearly erroneous, even if there is another permissible view of the evidence. *See United States v. Rizzo*, 349 F.3d 94, 98 (2d Cir. 2003) ("[A] district court's choice between two permissible views of the evidence cannot be clearly erroneous.").[3]

In short, the district court committed no procedural error in finding by a preponderance of the evidence that the robbery involved the taking of cocaine and, based upon that finding, that the one-level enhancement under Section 2B3.1(b)(6) applied to Spear-Zuleta's Guidelines range.

\* \* \*

We have considered all of Spear-Zuleta's remaining arguments and find them to be without merit. Accordingly, the judgment of the district court is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

---

[3] Spear-Zuleta also contends that Branham's testimony was not credible because she suggested that Robinson set off the alarm during the robbery and "[i]t is unlikely that Mr. Robinson would summon police to his home if there was a cache of drugs present." Appellant's Br. at 45. However, we similarly conclude that the district court was entitled to resolve these credibility issues after conducting the evidentiary hearing.